IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:09-CR-249-D(06) |
| VS. | § | |
| | § | |
| MATTHEW NORMAN SIMPSON, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Matthew Norman Simpson ("Simpson") moves the court to reconsider its August 19, 2010 memorandum opinion and order denying his motion for release on conditions or, alternatively, motion for reconsideration of the court's order of detention in light of new information. Simpson also moves the court to sever his trial from the trial of his codefendants. For the reasons that follow, the court denies the motions.

I

The court has set out the relevant background facts and procedural history in prior opinions denying Simpson's motions for release. *See United States v. Simpson*, 2010 WL 3283053, at *1 (N.D. Tex. Aug. 19, 2010) ("*Simpson II*") (Fitzwater, C.J.) (denying motion for release on conditions or for reconsideration of detention order); *United States v. Simpson*, 2009 U.S. Dist. LEXIS 129667, at *1-3 (N.D. Tex. Nov. 12, 2009) ("*Simpson I*") (Fitzwater, C.J.) (denying motion for review of and release from pretrial detention order), *aff'd*, 360 Fed. Appx. 537 (5th Cir. Jan. 11,

2010). The court will therefore briefly summarize the background facts and procedural history that are pertinent to the present decisions.

Simpson is among 19 defendants charged with the offense of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349.[1] Simpson was arrested on September 4, 2009 and was ordered detained following a hearing before a magistrate judge. The court originally set the trial of the then-apprehended defendants, including Simpson, for November 16, 2009. Before that trial date was reached, however, the court determined that the case was complex within the meaning of the Speedy Trial Act, and it granted the government's motion to continue the case based on the ends of justice. *See United States v. Haney*, 2009 WL 3363821, at *1 (N.D. Tex. Oct. 19, 2009) (Fitzwater, C.J.) (holding that government had established that the case was so complex due to the number of defendants and the nature of the prosecution that it was unreasonable to expect adequate preparation for the trial itself within the time limits established by the Speedy Trial Act). The court has continued the trial date three times in all—once on the government's motion and twice on the motions of codefendants. Simpson has opposed all three requested continuances. The trial is

---

[1]There are also other charges and a forfeiture allegation against Simpson and certain other defendants contained in the second superseding indictment filed on March 24, 2010. Simpson is charged in counts 1, 2, 4, and 7.

now set for February 7, 2011.  Following Simpson's arrest, he was ordered detained by the magistrate judge.  Simpson moved for review of and release from the detention order, and the court in *Simpson I* denied the motion in November 2009.  The Fifth Circuit affirmed that decision.  On July 9, 2010 Simpson filed a motion for release on conditions, or in the alternative, reconsideration of the court's detention order.  The magistrate judge recommended denial of the motion on July 28, 2010, and Simpson objected.  Following *de novo* review, the court in *Simpson II* denied the motion on August 19, 2010.  Simpson filed the instant motion for reconsideration 11 days later, on August 30, 2010.

Simpson bases his motion for reconsideration on the conditions of his pretrial confinement, alleging that (1) he was placed in administrative segregation, at the behest of the prosecutor, for almost three months; (2) he was not advised why he was being detained in administrative segregation; (3) his legal materials were seized by the Bureau of Prisons, not returned for over five months, and provided to the prosecutor; and (4) his telephone conversations (including conversations with his attorneys) have been recorded and provided to the government.²

Simpson also moves to sever his trial from the trials of his codefendants.  He maintains that he will be prejudiced if his trial

---

²The government denies Simpson's assertions as immaterial and flawed, but it contends they are in any event irrelevant to the court's decision.

is not severed; the February 7, 2011 trial setting violates his right to a speedy trial; his continued pretrial incarceration is oppressive because he has been detained for over one year, his legal papers have been seized, he has been put in custodial segregation, and his telephone calls to his attorneys have been recorded and provided to the prosecution; and his incarceration has impaired his ability to prepare his defense.

II

The court turns first to his motion for reconsideration.

A

As the court explained in *Simpson II*, the court can reopen a detention hearing

> at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).[3] But the court also concluded that the length of pretrial detention, for example, had no relevance to an analysis under § 3142(f). *See Simpson II*, 2010 WL 3283053, at *2. The court also held that whether Simpson's defense is impaired is "immaterial to the question whether any condition or combination of

---

[3]It is unclear whether Simpson seeks (for a second time) to reopen his detention hearing under 18 U.S.C. § 3142(f) or to release him on conditions under the Due Process Clause of the Fifth Amendment. The court will address both arguments.

conditions would reasonably assure Simpson's appearance as required." *Id.* at *5. None of the conditions of pretrial confinement that Simpson relies on in his present motion has a material bearing on whether there are conditions of release that will reasonably assure his appearance. Moreover, although Simpson argues that these conditions are new, he presented several of them as grounds for release in his July 9, 2010 motion for release on conditions, which the court denied in *Simpson II*.

Accordingly, the court holds that the pretrial conditions on which Simpson relies do not of themselves justify reopening his detention hearing.

B

The court next addresses whether Simpson's continued detention is permissible under the Due Process Clause of the Fifth Amendment.

Simpson relies primarily on cases like *Bell v. Wolfish*, 441 U.S. 520 (1979), to argue that his conditions of confinement warrant his release. These cases are inapposite because they address civil rights actions seeking relief from pretrial detention due to length or conditions of confinement. *See United States v. Shakur*, 1987 WL 12404, at *8 (S.D.N.Y. Jun. 11, 1987) (holding that the safeguards of the Bail Reform Act are available to ensure proper detention, but "[i]f the particular conditions of his incarceration are punitive, his remedy is a civil rights action." (citing *Bell*, 441 U.S. 520)). Simpson's present motion is not a

civil rights action.  His remedy, if any, for the conditions on which he relies lies elsewhere, not in a motion for release from confinement.

Simpson also relies on *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989), in which the panel concluded that, in considering whether pretrial detention offends due process, the district court should consider not only factors relevant to the initial detention decision but also "additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay." *Id.* at 801.  In *Simpson II* the court evaluated these additional factors and found that Simpson's continued pretrial detention did not violate due process.  *See Simpson II*, 2010 WL 3283053, at *4.

The pretrial conditions on which Simpson now relies were either adequately considered in *Simpson II* or are irrelevant to the *Hare* analysis.  In his July 9, 2010 motion for release on conditions, Simpson alleged that (1) he had been placed in administrative segregation; (2) he was not told why he was placed in administrative segregation; and (3) his legal materials were confiscated. D. July 9, 2010 Mot. 18-20.  The court therefore was aware of these allegations when it denied Simpson's motion in *Simpson II*, just 11 days before Simpson filed this motion.

Moreover, the *Hare* panel focused exclusively on the duration of pretrial detention and did not hold that conditions of detention can implicate due process. *See Hare*, 873 F.2d at 800 (holding that, in addition to risk of flight and danger to the community, court must consider length of pretrial detention when evaluating due process claim).

> [C]ases involving a due process challenge to pretrial detention have focused solely upon the duration of detention and whether the duration amounts to a due process violation; they do not even remotely hint at the suggestion that due process might require a defendant to be released if pre-trial detention impairs his ability to prepare for trial.

*United States v. Stanford*, ___ F.Supp.2d ___, 2010 WL 2745780, at *5 (S.D. Tex. July 7) (internal quotation marks omitted), *aff'd*, 2010 WL 3448524 (5th Cir. Aug. 31, 2010). The court therefore holds that Simpson's continued pretrial detention does not violate due process. His motion for reconsideration is denied.[4]

---

[4]Simpson requests in the alternative that the court consider releasing him to a halfway house or direct that the United States Marshals Service bring him to his attorneys' offices with sufficient frequency that he can prepare for trial. The court denies his first request for the reasons on which the court has previously relied in determining that he is a flight risk. The court also denies the second request. It concludes that, at a minimum, Simpson must demonstrate that he cannot adequately prepare for trial through personal meetings with his counsel at the detention facility—something almost always required of detained defendants.

III

The court now turns to Simpson's motion to sever.

A

"It is well settled in this circuit that codefendants who are indicted together should be tried together." *See United States v. Oliver*, 2008 WL 2511751, at *1 (N.D. Tex. Jun. 23, 2008) (Fitzwater, C.J.) (citing *United States v. Lopez*, 979 F.2d 1024, 1035 (5th Cir. 1992)). "Joinder is the rule rather than the exception." *United States v. Mikolajczyk*, 137 F.3d 237, 240 (5th Cir. 1998). In particular, codefendants charged with conspiracy should be tried together. *See United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993); *United States v. Kahaner*, 203 F. Supp. 78, 80-81 (D.C.N.Y. 1962) (noting that persons who are indicted together should be tried together particularly "where the indictment charges a conspiracy or a crime which may be proved against all the defendants by the same evidence"). The court should grant a severance only upon finding that there is a serious risk that a joint trial would compromise a specific trial right of one defendant, or prevent the jury from making a reliable judgment on guilt. *See United States v. Neal*, 27 F.3d 1035, 1045 (5th Cir. 1994) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

To decide Simpson's motion for severance, the court must balance the potential prejudice to him against the public interest in joint trials. *See Oliver*, 2008 WL 2511751, at *1 (citing *United*

*States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. Unit B Dec. 1981)). To obtain a trial severance, Simpson must do more than show some prejudice; he must demonstrate that he will receive an unfair trial and suffer specific and compelling prejudice against which the court cannot protect him. *See United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007).

B

Simpson's sole basis for seeking a severance is the assertion that the failure to sever his trial from that of his codefendants will violate his right to a speedy trial under the Sixth Amendment and the Speedy Trial Act.

The Speedy Trial Act requires that a trial commence within 70 days from the later of the date the indictment is filed and made public or the date the defendant appears before a judicial officer of the court in which the charge is pending. 18 U.S.C. § 3161(c)(1). But certain periods of time are excluded from the speedy trial clock, including "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In granting an "ends of justice" continuance, the court may do so on the basis that

> the case is so unusual or so complex, due to the number of defendants [or] the nature of the prosecution . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

*Id.*, § 3161(h)(7)(B)(ii). The court declared this case complex and granted an "ends of justice" continuance in its October 19, 2009 memorandum opinion and order. *See Haney*, 2009 WL 3363821, at *2. In *Haney* the court specified the grounds for finding that the ends of justice served by granting the continuance outweighed the best interests of the public and the defendants in a speedy trial, as required by § 3161(h)(7)(A). *Haney*, 2009 WL 3363821, at *1. According to the government, the conspiracy lasted six years and caused a $12 million loss; the discovery is voluminous and over 200 terabytes of computer data have been recovered; and the government anticipates that its case-in-chief will last 15 days. *Id.*

The court granted a second ends of justice continuance on February 1, 2010 to allow newly-apprehended defendants adequate time for discovery and pretrial preparation. *See United States v. Faulkner*, No. 3:09-CR-249-D, order at 1-2 (N.D. Tex. Feb. 1, 2010) (Fitzwater, C.J.) (noting that the case was previously declared complex and continuing trial to October 4, 2010). On August 26, 2010 the court granted a third continuance, finding that the ends of justice served by the continuance outweigh the best interest of the public and the defendants in a speedy trial because the case is so complex that it is unreasonable to expect adequate preparation

for trial within the Speedy Trial Act's time limits.  *See United States v. Faulkner*, No. 3:09-CR-249-D, order at 5 (N.D. Tex. Aug. 26, 2010) (Fitzwater, C.J.).  As this case has progressed, the court's initial finding that the case is complex has been corroborated rather than undermined.  Because commencing the trial on February 7, 2011, the current trial date, will fully comply with the requirements of the Speedy Trial Act, the court denies Simpson's motion to sever on the basis of his statutory right to a speedy trial.

C

Simpson's right to a speedy trial is also guaranteed by the Sixth Amendment.  "It will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *See United States v. Newton*, 2010 WL 769507, at *3 (N.D. Tex. Mar. 8, 2010) (Fitzwater, C.J.) (quoting *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002)).

To decide whether Simpson's Sixth Amendment speedy trial right has been violated, the court applies the four-factor test set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), which considers "(1) 'length of delay,' (2) 'the reason for the delay,' (3) 'the defendant's assertion of his right,' and (4) 'prejudice to the defendant.'"  *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009) (quoting *Barker*, 407 U.S. at 530).  The length of

delay is a threshold inquiry——where the delay between the indictment and trial exceeds one year, the court should "undertake[] a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed." *Molina-Solorio*, 577 F.3d at 304 (internal quotation marks omitted); *see also United States v. Jackson*, 549 F.3d 963, 971 (5th Cir. 2008). "Prejudice may be presumed where the first three factors weigh heavily in the defendant's favor." *See United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007) (quoting *United States v. Hernandez*, 457 F.3d 416, 421 (5th Cir. 2006) (internal quotation marks omitted). More than one year has elapsed since Simpson was indicted;[5] therefore, the court will evaluate the first three factors to determine whether to presume prejudice.

1

The length of the delay in Simpson's case is not long enough to presume prejudice based on this factor alone. *See Parker*, 505 F.3d at 328-29 ("We have held that delays of less than five years are not enough, by duration alone, to presume prejudice."). The court will assume, without deciding, that the delay is approximately 1½ years. This factor does not weigh in Simpson's favor. *See Parker*, 505 F.3d at 329 n.2 (citing cases that hold

---

[5]Simpson was indicted on September 1, 2009 and arrested three days later. Two superseding indictments have been filed: on January 5, 2010 and March 24, 2010. The court will assume that it must measure the delay from the date Simpson was indicted, September 1, 2009.

that fourteen months, sixteen months, and three years and nine months are insufficient delays to presume prejudice).

2

Second, the reason for the delay weighs strongly against Simpson. "To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. The court has previously found this case to be complex for the reasons explained in *Haney*, 2009 WL 3363821, at *2, and confirmed in *Simpson II*, 2010 WL 3283053, at *3; *see also United States v. Perez*, 489 F.2d 51, 71-72 (5th Cir. 1973) (holding that twenty-five motions filed by sixteen defendants and changes of counsel were sufficient justification for a three-year delay); *United States v. Johnson*, 2008 WL 2682877, at *4 (E.D. Pa. Jul. 8, 2008) (denying defendant's motion to dismiss for violation of his speedy trial right where the "case is a serious, complex conspiracy charge. The discovery is voluminous, involving thousands of documents [and] materials seized in twenty-six different searches[.]").

3

Although in his motion Simpson has asserted his right to a speedy trial, that factor is alone insufficient to establish a presumption of prejudice. Because the first three *Barker* factors must weigh heavily in Simpson's favor to support a presumption of prejudice, the court holds that prejudice is not presumed.

Because prejudice is not presumed, Simpson must "demonstrate 'actual prejudice' that outweighs the other factors." *See Newton*, 2010 WL 769507, at *3 (citing *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009)). "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.'" *Id.* (quoting *Harris*, 566 F.3d at 433). A defendant's prejudice due to an impaired defense is the most serious concern. *See Barker*, 407 U.S. at 532.

In his motion, Simpson maintains that his continued pretrial incarceration is oppressive. He notes that he has been detained for more than one year, and he contends that he has been placed in custodial segregation at the "*ex parte* direction of his adversary." D. Mot. Sever 3; that his legal papers have been seized and provided to his adversary; and that his telephone conversations (including conversations with his attorneys) have been monitored and produced to his adversary.

As to the length of Simpson's incarceration, the court earlier found that in this case, a 1½ year delay is justified. "A lengthy pretrial incarceration does not inherently offend a defendant's liberty interests." *United States v. Frye*, 489 F.3d 201, 213 (5th

Cir. 2007).[6]  As for Simpson's complaints regarding custodial segregation, he has not "demonstrated that the conditions of his pretrial incarceration were extraordinary or fell below standard levels."  *See Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991). And his other complaints about his treatment are based on other factors rather than on delay in bringing the case to trial.

Simpson does not allege that he has suffered prejudice because of anxiety and concerns.  He does not specifically assert that his preparation for trial is more difficult *due to a delay in trial* as distinguished from other considerations.  For example, he "has not alleged that due to the delay his defense was any more difficult to present because of the unavailability of witnesses or their loss of memory."  *Cowgill v. Zimmerman*, 667 F. Supp. 1083, 1086 (E.D. Pa. 1987).  The court holds that Simpson has not met his burden of establishing actual prejudice.

Accordingly, the court holds that Simpson has not been denied his Sixth Amendment right to a speedy trial.  Because, as Simpson recognizes, a severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of

---

[6]Although Simpson is of course presumed to be innocent of the charges against him, if he is found guilty at trial, he will receive credit for his time in detention between his arrest and trial.  *See, e.g., Frye*, 489 F.3d at 213; *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984); *see also* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed[.]").

one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," D. Mot. Sever 1-2, and Simpson has not made the required showing of actual prejudice that outweighs the other factors, the court denies his motion to sever.

\* \* \*

Simpson's August 30, 2010 motion for reconsideration of this court's order denying the defendant's motion for release, and his August 24, 2010 motion under Rule 14 to sever his trial from the codefendants in order to secure his right to a speedy trial under the Sixth Amendment and 18 U.S.C. § 3161 and the due process of law are denied.

**SO ORDERED.**

October 26, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE