IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:09-CR-249-D(06) |
| VS. | § | |
| | § | |
| MATTHEW NORMAN SIMPSON, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Matthew Norman Simpson ("Simpson") moves for the release and exemption of assets from forfeiture to pay attorney's fees and costs. In response, the government cross-moves for the deposit of assets in the court registry, discovery, and amendment or issuance of a temporary restraining order. For the reasons that follow, the court denies Simpson's motion, and it denies the government's cross-motion in part on the merits and in part as moot.

I

A

Simpson was charged by indictment on September 1, 2009 with conspiracy to exceed authorized access to a protected computer, in violation of 18 U.S.C. § 1030(b). The indictment included a count seeking forfeiture of several of Simpson's assets if he were convicted on the conspiracy charge. The government filed a bill of particulars that notified Simpson that it was seeking forfeiture of additional property. It also moved *ex parte* for a restraining

order ("RO") regarding an asset identified in the bill of particulars, and the court entered a sealed RO on September 9, 2009.

The grand jury later handed up a superseding indictment on January 5, 2010 and a second superseding indictment on March 24, 2010. In the superseding indictments, Simpson is not charged with violating 18 U.S.C. § 1030(b).[1] Both superseding indictments provide, however, that the government is seeking forfeiture based on Simpson's alleged violations of other statutes. In the superseding indictment and the second superseding indictment, Simpson is charged with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2) and (b)(2)(C), and aiding and abetting, in violation of 18 U.S.C. § 2; obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(c)(1); and false registration of a domain name, in violation of 18 U.S.C. § 3559(g)(1). Simpson's assets are also alleged to be subject to forfeiture upon a conviction on all of the counts, other than the false registration count, in which he is charged.

---

[1] Simpson argues that because the superseding indictments do not charge him with violating 18 U.S.C. § 1030(a)(4), the government has abandoned the ground on which the court originally granted an RO, and there is no longer a basis for the court to restrain his assets. The court addresses this argument below.

B

Simpson moves the court to release and exempt three assets ("the Assets") that are subject to forfeiture by the second superseding indictment: (1) $25,681.30 in funds contained in Account XXXX8340 in the name of Core IP Networks at Citizens National Bank of Texas, Waxahachie, Texas, seized on or about April 2, 2009; (2) $283,431.74 in funds contained in Account XXXX1898 in the name of Simpson Burwell, Ltd. at Citizens National Bank of Texas, Waxahachie, Texas, seized on or about April 2, 2009; and (3) $1,560,000.00 in funds, monies, or things of value acquired by Matthew Simpson c/o Simpson Burwell Ltd. from Asset Strategies International, Inc., 1700 Rockville Pike, Suite 400, Rockville, Maryland in the form of three The Perth Mint Precious Metals Certificates (Nos. 022726, 022727, and 022728). The first two assets were seized by the Federal Bureau of Investigation ("FBI") on April 2, 2009 after a magistrate judge found that there was probable cause to believe that the funds were criminal proceeds and issued warrants for their seizure. The third asset was restrained by the court's September 9, 2009 RO,[2] which found that the RO application, the grand jury indictment, and the affidavit of FBI Special Agent Allyn Lynd ("Agent Lynd") and supporting exhibits

---

[2]The September 9, 2009 RO describes the third asset as "$1,560,000.00 in funds, monies, or things of value held by Asset Strategies International, Inc., 1700 Rockville Pike, Suite 400, Rockville, Maryland on behalf of Matthew Simpson c/o Simpson Burwell Ltd[.]" RO 1.

established sufficient probable cause for the RO.[3]

Simpson argues that the restraint of his assets has effectively deprived him of the ability to mount the most effective defense to the charges against him. He notes that this case is particularly complex: his counsel have received two terabytes of data and expect to receive additional discovery in at least an equal amount. After these data are received, they must be reviewed and analyzed by various experts, including a forensic accountant.

Simpson requests a hearing at which the court requires the government to establish its basis for the forfeiture action and the likelihood that it will succeed in forfeiting his property. He specifically contends that (1) the determination of probable cause was not an adversarial process and (2) even if the government may have established probable cause initially, the basis for the RO is no longer valid since Simpson was originally indicted for a violation of 18 U.S.C. § 1030(b),[4] and he is no longer charged with this offense in the second superseding indictment.

---

[3]The government notes that only the third asset was restrained in the September 9, 2009 RO and that its response is therefore limited to this asset. The government argues that to challenge the restraint of the other assets, Simpson must file a motion contesting the seizure warrants. Because Simpson has moved for the release of all three assets, and because any distinction in the manner in which the assets are restrained is immaterial, the court will apply one test to determine whether to hold a hearing concerning the Assets.

[4]Simpson actually cites 18 U.S.C. § 1030(a)(4), the underlying substantive offense for the conspiracy charge based on § 1030(b).

The government responds that (1) Simpson is not entitled to the Assets simply because he wants to use them to pay his defense fees and costs; (2) Simpson has not met his burden of proof to justify convening a hearing; and (3) Simpson has failed to present evidence regarding his financial need for funds to pay for an attorney. If the court orders a probable cause hearing, the government cross-moves for an order requiring Simpson to provide information related to his prior and current ability to pay his defense fees and costs. The government also cross-moves for an order requiring Simpson to deposit into the court registry the three gold certificates that are subject to the RO and, if the court finds that the RO is no longer valid, enter a new RO.

II

"[N]either due process, nor the Sixth Amendment right to counsel, requires that assets needed to pay an attorney be exempted from restraining orders or, ultimately, from forfeiture." *United States v. Melrose E. Subdivision*, 357 F.3d 493, 500 (5th Cir. 2004) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623-35 (1989), and *United States v. Monsanto*, 491 U.S. 600, 616 (1989)). Rather, due process and the Sixth Amendment simply require that the court "in certain circumstances hold a hearing on the restraining order and make a determination that the assets are properly subject to forfeiture." *Id.* "[T]he Court must base any release of seized assets upon a finding that the government has not

established probable cause to believe that the assets are tainted." *United States v. Prejean*, 2005 WL 3543817, at *3 (E.D. La. Oct. 21, 2005).

Simpson requests that the court convene a hearing to determine whether to continue restraining the Assets. A probable cause hearing asks "whether the government [has] established probable cause to believe that all of the assets seized were traceable to illegal [activity]." *Id.* at *2. The hearing is limited in scope to determining whether there is probable cause to believe that the seized or restrained assets are traceable to criminal activity; it is not a forum for challenging the grand jury's finding of probable cause regarding the underlying crime. *See United States v. Jones*, 160 F.3d 641, 647-48 (10th Cir. 1998)("We do not require, as defendants urge, that the government reestablish probable cause to believe that defendants are guilty of the underlying [offense.]").

### III

#### A

"Due process does not automatically require a [post-restraint, pretrial] hearing and a defendant may not simply ask for one." *Id.* at 647. In *United States v. Holy Land Foundation for Relief and Development*, 493 F.3d 469 (5th Cir. 2007) (en banc), the *en banc* Fifth Circuit held that in determining whether to hold a hearing

for a property owner to contest an RO,[5] a district court should consider three factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)[6]: "the private interest that will be affected by the restraint; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the burdens that the hearing would entail." *Holy Land Found.*, 493 F.3d at 475.[7] "[C]ircuits employing this test have found that a property owner's interest is particularly great when he or she needs the restrained assets to pay for legal defense on associated criminal charges[.]" *Id.* (citing *Melrose E. Subdivision*, 357 F.3d at 499-500).

---

[5]The same test should be used for assets that have been seized pursuant to a criminal forfeiture proceeding, as have two of the Assets in this case. *See*, *e.g.*, *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001).

[6]The government argues that two additional *Eldridge* factors must be considered: whether the defendant has no other funds to pay his attorney and whether there is reason to believe that the restrained assets are untainted property for which no probable cause exists for forfeiture. The court will consider these factors in light of the ones set out in *Holy Land Foundation*, but not as independent factors.

[7]In determining whether to hold a probable cause hearing to decide whether to issue a post-indictment pretrial restraining order, the court need not follow the notice and hearing provisions of Fed. R. Civ. P. 65. *See Holy Land Found.*, 493 F.3d at 475-76. The Fifth Circuit and several others have adopted the *Eldridge* test to determine when a hearing is required. *See id.*

B

The first factor the court considers is the private interest that will be affected by the restraint.

1

The Sixth Amendment guarantees to criminal defendants a qualified right to choose their counsel. *See Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004). The Tenth Circuit has held:

> [a]s a preliminary matter, a defendant must demonstrate to the court's satisfaction that [he] has no assets, other than those restrained, with which to retain private counsel and provide for [himself] and [his] family. The need for this requirement is obvious. If a defendant fails to persuade the court on this point, then the private interest of the [*Eldridge*] calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing.

*Jones*, 160 F.3d at 647 (citations omitted).[8] In other words, if Simpson does not persuade the court that he lacks other, unrestrained assets to retain private defense counsel, this factor weighs against convening a hearing. *See id.; see also United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001) (noting that defendant's private interest would be absent if defendant possessed the means to hire an attorney independently of seized assets). Additionally, "[a] defendant must also make a prima facie showing of a bona fide reason to believe the grand jury erred in

---

[8]Although *Jones* is a Tenth Circuit decision, Simpson relies on it in his briefing. *See, e.g.,* Mot. 2-3.

determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the . . . offense." *Jones*, 160 F.3d at 647 (internal quotation marks and brackets omitted; ellipsis added) (citing 18 U.S.C. § 982(a)(6)).

District courts have followed *Jones* and *Farmer* in determining whether the court should hold a probable cause hearing. *See United States v. Vogel*, 2010 WL 547344, at *2-3 (E.D. Tex. Feb. 10, 2010) (adopting magistrate judge's report); *United States v. Causey*, 309 F.Supp.2d 917, 918-27 (S.D. Tex. 2004). In *Vogel* the indictment charged the defendant with drug-related conspiracies and sought forfeiture of seized accounts. *Vogel*, 2010 WL 547344, at *1. The defendant moved for release and exemption from forfeiture the funds he maintained were needed to pay attorney's fees and defense costs, and he requested that the court conduct a hearing to determine whether the government could establish probable cause that the seized assets were tainted. *Id*. at *2. The government argued that no probable cause hearing was necessary because the defendant had not met his burden given that two grand juries had found probable cause to seize the assets in question. *Id*.

The *Vogel* court applied the *Jones* and *Farmer* standards and considered (1) whether the defendant had demonstrated there were no assets other than those subject to forfeiture with which to pay defense costs and living expenses and (2) whether the defendant had

established a bona fide reason to believe that the grand jury erred in finding probable cause to believe the restrained property was subject to forfeiture if the defendant were convicted. *Id. Vogel* concluded that, if the defendant satisfied both burdens, the court should conduct a probable cause hearing at which the government would be obligated to establish probable cause to believe that the restrained assets are traceable to the criminal offense. *Id.* The *Vogel* court held that no hearing was required because the defendant failed to provide a bona fide reason to believe that the grand jury erred in finding probable cause to believe the restrained property would be subject to forfeiture if the defendant was convicted. *Id.* at *3-4. Therefore, the court denied the defendant's motion for release and exemption from forfeiture funds. *Id.* at *4.

In *Causey* the defendant filed a motion to dissolve a post-indictment restraining order. *Causey*, 309 F.Supp.2d at 918. The defendant was indicted for conspiracy, wire fraud, securities fraud, and insider trading, and the court ordered the post-indictment restraint of $55 million of the defendant's assets. *Id.* The government challenged the defendant's motion to dissolve the order, arguing that the defendant should only be allowed to challenge the restraint at a hearing after he had made a preliminary showing of improper restraint and the need for the restrained property. *Id.* at 919. The court followed the procedure set out in *Jones* and held that a post-restraint, pre-conviction

hearing is not required "absent a prima facie showing, made through a properly supported motion, that [the defendant] needs the assets for reasonable and necessary legal and/or living expenses, and that the grand jury erred in determining the assets are either proceeds from or traceable to the offenses charged in the Superseding Indictment." *Id.* at 927.

2

The court need not decide whether Simpson has met his burden of demonstrating that he lacks unrestrained assets to pay attorney's fees. This is so because Simpson has failed to satisfy the second requirement of *Jones* and *Farmer*: that he make a *prima facie* showing that the grand jury erred in determining that there is probable cause that the Assets are traceable to criminal activity. In his motion, Simpson appears to advance a general challenge to the existence of probable cause and to request a hearing at which the government must establish probable cause. Specifically, he argues that the grand jury's initial determination that there was probable cause to believe that his property was subject to forfeiture is insufficient to support continued restraint because (1) it was not the result of an adversarial process, and (2) he is not charged in the superseding indictments with violations of 18 U.S.C. § 1030, the charge in the indictment that enabled the government to seek forfeiture in the first place. The government responds that Simpson is still charged in the

indictment with violating 18 U.S.C. § 1030, even though the grand jury has handed up two superseding indictments that do not include this charge.

"[A]ssets in a defendant's possession may be restrained . . . based on a finding of probable cause to believe that the assets are forfeitable." *Monsanto*, 491 U.S. at 615; *see also Melrose E. Subdivision*, 357 F.3d at 504-05 (holding that pretrial restraining order under 21 U.S.C. § 853 requires only a showing of probable cause). The court can enter an RO with respect to assets that are subject to criminal forfeiture upon a grand jury finding of probable cause. *See Melrose E. Subdivision*, 357 F.3d at 503 n.9. The court can also rely on a probable cause affidavit executed by an FBI Agent. *See, e.g., United States v. Kaley*, 579 F.3d 1246, 1259 (11th Cir. 2009). In other words, the court was not required to conduct an adversarial hearing before entering an RO. The court restrained Simpson's property on September 9, 2009 based on a determination that the RO application, the grand jury indictment, Agent Lynd's affidavit (which specifically identified Simpson's property as being subject to forfeiture), and the supporting exhibits established sufficient probable cause to issue the RO.

Moreover, when a grand jury hands up a superseding indictment, previous indictments are not rendered feckless; a superseding indictment does not in effect dismiss prior indictments. *See United States v. Cruz-Lopez*, 357 Fed. Appx. 193, 198 (10th Cir.

2009) ("Numerous circuits have held in similar contexts that filing a superceding indictment does not make the earlier indictment void and that the two can co-exist." (citations omitted)). "[T]wo indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment." *United States v. Stricklin*, 591 F.2d 1112, 1115-16 n.1 (5th Cir. 1979) (citations omitted). In his response to the government's cross-motion, Simpson asserts that all parties in this case are under the impression that they will proceed to trial on the second superseding indictment. But when there is more than one indictment that has not been dismissed, "the government may select one of them with which to proceed to trial." *Id.* (citation omitted). The court agrees that the indictment remains in full force and effect, and thus Simpson is still charged with violating 18 U.S.C. § 1030.[9] Therefore, the fact that the superseding indictments do not charge Simpson with violating § 1030(b) does not eliminate that charge from serving as a basis for the RO. Moreover, even if the elimination of the § 1030(b) charge had that effect, the superseding indictments contain forfeiture allegations related to the Assets and therefore establish probable cause to believe that the Assets are subject to forfeiture. Simpson has not shown that

---

[9]In fact, the government notes that it is to prevent hyper-technical arguments like Simpson's that the government does not move to dismiss prior indictments until after the trial is concluded.

an RO that is based in part on a charge that has been dropped from one indictment is compromised in any respect when superseding indictments establish probable cause to restrain an asset covered by the RO.

Because Simpson's primary arguments are misplaced, and because he has otherwise failed to make a *prima facie* showing that the grand jury erred in determining that there is probable cause that the Assets are traceable to criminal activity, the court need not decide whether he has shown that he is unable to pay defense costs. The court holds that Simpson's private interest affected by the restraint weighs against holding a probable cause hearing.

C

The second *Eldridge* factor considers the risk of erroneous deprivation of Simpson's interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Simpson concedes that the risk of erroneous deprivation is low. *See* Mot. 5 ("Defendant contends that the safeguards of the applicable forfeiture statutes are adequate to protect against any chance of erroneous deprivation."). Certain protections are already built into the forfeiture statutes charged in the indictments, 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 1037(c), and 18 U.S.C. § 1030(i). *See, e.g., Holy Land Found.*, 493 F.3d at 476 n.10 ("The risk of an erroneous deprivation of [third-party claimant's] interest is minimal in light of the

safeguards afforded [by statute.]"). The court therefore holds that this factor weighs against convening a probable cause hearing.

D

Under the third factor, the court considers the government's interest, including the burdens that the hearing would entail. The government points out that it would encounter one particularly heavy burden at the probable cause hearing: being required to reveal witnesses and evidence before trial.

> [T]he district court must be careful, when exercising its considerable discretion over pretrial procedural matters, to give proper weight to the government's legitimate interests in protecting certain evidence and witnesses from pretrial exposure. Although the government bears the burden at a pretrial hearing of persuading the court that probable cause exists, . . . the district court generally should not permit a [third party] to examine the government's witnesses without first producing some evidence suggesting that the restrained assets were untainted.

*Melrose E. Subdivision*, 357 F.3d at 507 n.17. Simpson argues that, because "[t]he forfeiture allegations that would be the subject of the hearing are the very same allegations contained in the Indictment[,] [r]equiring the government to prove up their forfeiture allegations in a pre-trial hearing would be nothing more than allowing them a dress rehearsal of a portion of their case-in-chief." Mot. 5-6. But this assertion confirms the government's point. The government should not be required to put on a dress rehearsal performance of part or all of its case-in-chief as the

price for protecting its valid interest in preserving assets that are allegedly subject to forfeiture. *Cf. Jones*, 160 F.3d at 647 ("The government . . . has a valid interest in assuring that funds illegally obtained are not laundered or secreted between the time a defendant is indicted and the time when his criminality is determined by actual conviction." (internal quotation marks and citation omitted)). The court therefore concludes that this factor weighs against holding a probable cause hearing.

E

Having considered the *Eldridge* factors, the court holds that Simpson has not shown that he is entitled to a probable cause hearing, and it denies his motion.

IV

In its cross-motion, the government requests that the court order Simpson to deposit three Perth Mint Precious Metals Certificates in the amount of $1,560,000.00 held by Asset Strategies International, Inc., 1700 Rockville Pike, Suite 400, Rockville, Maryland on behalf of Simpson c/o Simpson Burwell Ltd. in the court's registry. The government has made no argument, however, in support of this request, and it has failed to show that this relief is necessary to preserve this asset. Moreover, Simpson's attorneys represent that they are holding the gold certificates in a safe place. The court therefore denies the government's request.

V

The government also requests that if the court holds that the RO is no longer valid, it issue a new RO. Because the court holds that the RO is still valid and in full effect, the government's request is denied as moot.

\* \* \*

Simpson's December 3, 2010 motion for the release and exemption of assets from forfeiture to pay attorney fees and defense costs is denied. The government's December 27, 2010 cross-motion for deposit of the assets in the court's registry, discovery, and the amendment or issuance of a temporary restraining order is denied in part on the merits and in part as moot.

**SO ORDERED.**

January 20, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE