IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,      §
                               §
                Plaintiff,     §
                               §   Criminal No. 3:09-CR-249-D(06)
VS.                            §
                               §
MATTHEW NORMAN SIMPSON,        §
                               §
                Defendant.     §

MEMORANDUM OPINION
AND ORDER

In this memorandum opinion and order, the court addresses several pretrial motions filed by defendant Matthew Norman Simpson ("Simpson").[1]

I

*Motion for Disclosure of Electronic Surveillance*

A

Simpson moves the court to require the government to affirm or deny the existence of electronic surveillance under 18 U.S.C. § 3504(a)(1). Simpson does not focus, for example, on government surveillance conducted under court order. Instead, he maintains that a cooperative and commercial relationship and mutual reliance exists between the government and complainant incumbent local exchange carriers ("ILECs") or traditional telecoms, that the ILECs have functioned as part of the law enforcement team, and that the

---

[1]The court has separately addressed other motions filed by Simpson. His motions *in limine* will be addressed during or after the pretrial conference.

ILECs have a unique capacity for and expertise regarding electronic interception and an essential role in the interception of electronic communications. He therefore contends that the government is obligated to affirm or deny the existence of unlawful surveillance by the ILECs or traditional telecoms identified in the indictment. Simpson posits that the government should inquire of these ILECs to ascertain any involvement by them, or their knowledge of, any electronic surveillance of Simpson.

The government responds that although a mere assertion of unlawful electronic surveillance is enough to trigger the government's obligation to affirm or deny pursuant to § 3504, the assertion, at a minimum, must be a positive statement that unlawful surveillance has taken place; a generalized motion based on the possibility of such surveillance is not a claim within the meaning of § 3504(a)(1). The government asserts that there are no facts or circumstances that would support Simpson's making a positive statement that unlawful surveillance has taken place.

Section 3504(a)(1) provides that "upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act[.]" Simpson cannot simply assert that it is possible that illegal surveillance has occurred; rather, he must make "at a minimum, a

positive statement that unlawful surveillance has taken place."
*United States v. Tucker*, 526 F.2d 279, 282 (5th Cir. 1976). In
*Tucker* the court affirmed the district court's ruling that
defendants failed to make a sufficient claim to trigger the
obligations of § 3504(a)(1) when they alleged that the government
*may have* conducted illegal electronic surveillance of them and
their attorneys. *Id.* at 281-82. Moreover, although a mere
assertion of unlawful surveillance is enough to trigger the
government's obligation under § 3504(a)(1), Simpson, as the
aggrieved party, must allege more than a mere "suspicion" of such
surveillance, or that he has "reason to believe" that such
surveillance occurred. *See United States v. Robins*, 978 F.2d 881,
886 (5th Cir. 1992). He must make a "positive statement that
unlawful surveillance has taken place." *Id.* (summarizing and
citing holding of *Tucker*, 526 F.2d at 281-82. And he must point to
evidence to be used by the government in the prosecution that has
a causal link to illegal monitoring. *Id.* at 887; *see also In re
Dellinger*, 357 F. Supp. 949, 961 (N.D. Ill. 1973) (holding that, to
trigger the obligation of § 3504(a)(1), defendant must make showing
that specific item of evidence to be offered by the government
would be inadmissible). "[T]he district court retains wide
latitude to strike the necessary balance between due regard for a
defendant's constitutional rights and the right of the United
States to proceed with reasonable promptness in its investigations

- 3 -

and prosecutions." *Tucker*, 526 F.2d at 282.

B

Assuming that Simpson has actually asserted that unlawful surveillance has occurred, *cf.* D. Mot. 3 (stating that Simpson "has asserted the existence of unlawful electronic surveillance"), he certainly has not made a positive statement that unlawful surveillance has taken place.  Essentially, he asserts nothing more than that the ILECs and traditional telecoms have a unique capacity for and expertise regarding electronic interception and an essential role in the interception of electronic communications, and that they have been cooperating with the government in its prosecution of this case.  In other words, he asserts that they *can* intercept communications and that they are cooperating with the government.  But he does not make a positive statement that the government or private agents have in fact engaged in unlawful surveillance.  Moreover, Simpson's motion does not point to evidence to be used by the government that is causally linked to illegal surveillance.  *See Robins*, 978 F.2d at 887.

Accordingly, Simpson's motion requiring the United States to affirm or deny the existence of electronic surveillance is denied.

## *Motion for a Pretrial* Daubert *Hearing*

Simpson moves the court to hold a pretrial *Daubert* hearing to determine the basis for various technical assertions[2] in the indictment.[3] He contends that he should not be compelled to stand trial on these accusations until the court determines that these technical assertions are sufficiently valid and reliable as a matter of telecommunications technology and law to permit their introduction as evidence, and until he has received notice concerning any technical or specialized knowledge on which these assertions are based. Citing Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), he posits that the court must ascertain whether the indictment's assertions and definitions regarding this complex industry and certain of the

---

[2]He focuses specifically on (1) the descriptions and definitions of the telecommunications industry generally, incumbent local exchange carriers, competitive local exchange carriers, Voice over Internet protocols, Letter of Authority and Customer Facility Assignment, bandwidth, domain names, Internet Protocol addresses, remailers, and the colocation business; (2) the rules adopted by the Federal Communications Commission pertaining to the Universal Service Fund and telemarketing rules; and (3) technical assertions in the footnotes regarding Direct Inward Dialing, private branch exchange systems, digital subscriber lines, DS1 and DS3, and termination service.

[3]Although Simpson filed this motion before the grand jury returned the third superseding indictment, the court is not denying it as moot because it presents a matter that Simpson would likely re-urge in relation to the third superseding indictment and that the court concludes would benefit from a ruling at this time rather than closer to trial.

laws which govern it are reliable.  The government responds that
the indictment comports with the requirements for a sufficient
indictment and that *Daubert* pertains to the admissibility of
scientific or expert testimony rather than the sufficiency of the
indictment.  It also posits that, if Simpson is challenging the
competency or sufficiency of the evidence presented to the grand
jury, the motion should also be denied because he has no right to
a hearing in which to make such a challenge.  In sum, the
government maintains that Simpson is applying an evidentiary rule
to a grand jury proceeding.

     The court functions as a gatekeeper concerning the
admissibility of expert testimony.  *See, e.g., Pipitone v.
Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).  "The court may
admit proffered expert testimony only if the proponent, who bears
the burden of proof, demonstrates that (1) the expert is qualified,
(2) the evidence is relevant to the suit, and (3) the evidence is
reliable." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL
2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (citing
*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  Simpson
has not identified what anticipated expert testimony he challenges;
instead, he appears to challenge the allegations of the indictment
itself. *See* D. Mot. 2 (asserting that he "should not be compelled
to stand trial on these accusations unless and until this Court
determines that these technical assertions are sufficiently valid

and reliable"). To the extent he challenges the admissibility of expert evidence rather than the allegations in the indictment, *see id.* (referring to "introduction as evidence at trial"), he has not sufficiently identified the specific evidence that he challenges. It is unclear how the court could conduct a pretrial *Daubert* hearing that would be manageable or beneficial. Accordingly, the court in its discretion declines to convene a *Daubert* hearing and denies Simpson's motion. To the extent Simpson raises a *Daubert* challenge to specific expert testimony, the court can perform its gatekeeper role in response to a trial objection.

III

*Motion for Pretrial Notice under Rule 404(b)*

Simpson moves under Rule 404(b) for pretrial notice and a general description of other crimes, wrongs, or acts by Simpson and the purpose for which such evidence will be offered. In its response, the government agrees to comply with its obligations under Rule 404(b).

The government must provide the notice required by Rule 404(b) no later than the date specified *infra* in § IX. To the extent the government has agreed to comply with its obligations under Rule 404(b), Simpson's motion is denied as moot; otherwise, the motion is denied as exceeding what Rule 404(b) requires.

*Motion for a Pretrial Hearing*

Simpson moves for a pretrial hearing to determine the admissibility of coconspirator statements and to compel pretrial government proffer. He requests that the court conduct a pretrial hearing to determine the admissibility of any coconspirator statements that the government intends to introduce under Rule 801(d)(2)(E). Simpson argues for several reasons that a *James* hearing[4] should be conducted. He requests that the court order (1) that a pretrial hearing be held to determine the admissibility of all extrajudicial declarations the government intends to introduce under Rule 80l(d)(2)(E); (2) that the government be required to prove at this hearing the existence of a conspiracy and Simpson's participation in it at the time the Rule 801(d)(2)(E) statement was allegedly made, prior to attempting to introduce the statement under Rule 801(d)(2)(E); (3) that the government be required to prove at this hearing the declarant's participation in the conspiracy at the time the Rule 801(d)(2)(E) statement was made; (4) that the government be required to prove that any such statement was made during the course of and in furtherance of the conspiracy; and (5) that the government proffer to Simpson, at least 14 days before the hearing, all such

---

[4]*United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc).

statements that the government intends to introduce under Rule
801(d)(2)(E). The government opposes the motion, maintaining that
in this case a *James* hearing is neither required nor practical; the
government has agreed to comply with its obligations under the
Jencks Act, 18 U.S.C. § 3500, and the court's scheduling order;
coconspirator statements are not discoverable under Fed. R. Crim.
P. 16(a)(1)(A); and a hearing would unnecessarily prolong the trial
proceedings and would essentially result in two trials.

In *James* the Fifth Circuit held that coconspirator statements
are admissible as non-hearsay under Rule 801(d)(2)(E) only if
substantial independent evidence of a conspiracy exists. *United
States v. James*, 590 F.2d 575, 581 (5th Cir. 1979) (en banc). "A
*James* hearing, conducted outside the presence of the jury, is *one
potential method* by which the district court may ensure [that] the
Government can satisfy the predicate facts needed to prove the
conspiracy independent of the statements." *United States v.
Williams*, 264 F.3d 561, 576 (5th Cir. 2001) (emphasis added). But
deciding "[w]hether a *James* hearing is necessary in a particular
case [is] within the discretion of the trial court." *Id.* "*James*
has *never required* a hearing outside the presence of the jury."
*United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992)
(emphasis added). And in this case, the court agrees with the
government that convening such a hearing would be burdensome and
effectively result in a mini-trial of potentially considerable

- 9 -

length, given that one of Simpson's requests is that the government be required to prove at the hearing the existence of a conspiracy and of Simpson's participation in it at the time the statement was allegedly made. Presumably, Simpson would insist that the government make this showing through the witnesses whom the government intends to call to testify at trial. The government is not obligated in a conspiracy case involving Rule 801(d)(2)(E) evidence to participate in a form of elaborate pretrial discovery conducted under the guise of requiring that it satisfy the predicate facts needed to prove the admissibility of coconspirator statements. Accordingly, the court denies the motion.

The court recognizes that during the trial, it must "whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it [pursuant to Rule 801(d)(2)(E)] before admitting declarations of a coconspirator." *Fragoso*, 978 F.2d at 900. In complying with Rule 801(d)(2)(E), the court must determine whether there is sufficient "'evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy.'" *Id.* (quoting *Bourjaily v. United States,* 483 U.S. 171, 175 (1987)). The court will adhere to these requirements in trying this case.

V

*Motion to Compel Production of Coconspirator Statements*

As a component of his motion for a pretrial hearing, Simpson moves to compel the government to produce the coconspirator statements that it intends to use at trial under Rule 801(d)(2)(E). He maintains that he is entitled to pretrial discovery of these statements because they are in essence his statements under Rule 801(d)(2)(E), and he is entitled to production of his statements under Rule 16; disclosure is necessary to establish the reliability or lack of reliability of coconspirator statements; and, without disclosure, the defense will be less able to assist the court in making factual determinations required under Rule 801(d)(2)(E). The government responds that pretrial disclosure of coconspirator statements is not required by Rule 16 and that Simpson relies on non-binding authority.[5] The government also agrees to provide the defense a copy of any statements of testifying coconspirators pursuant to the Jencks Act.

"[S]everal courts have held that the fact that a coconspirator's statements are viewed as statements by the defendant under [Rule 801(d)(2)(E)] does not make them discoverable under Rule 16(a)(1)(A) or (B)." *United States v. Hansen*, 2005 WL 1206868, at *3 (N.D. Tex. May 18, 2005) (Fitzwater, J.) (citing *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988)).

---

[5]*United States v. Thevis*, 84 F.R.D. 47 (N.D. Ga. 1979).

"The admissibility of such statements can be determined at trial and the statements may be considered in light of any other independent evidence." *Id.* (citing *Bourjaily*, 483 U.S. at 180). The court holds that Simpson is not entitled to production of coconspirator statements under Rule 16, and it denies his motion.

## VI

### *Motion for Production and Inspection*

Simpson moves for production and inspection of favorable material or information that may lead to favorable evidence. The government opposes the motion to the extent Simpson seeks discovery beyond that to which he is legally entitled. It agrees to comply fully with its discovery obligations under Rules 12(b)(4), 16, and 26.2, the Jencks Act, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, and all orders of the court. To the extent that Simpson's requests are overbroad, vague, ambiguous, or place a greater burden on the government than the law provides, the government objects to Simpson's requests.

### A

### *Request for Favorable Evidence from Complainants*

As a preliminary matter, Simpson argues that the government's disclosure obligations similarly apply to non-government persons who functioned in a law enforcement capacity or as part of the prosecution or investigation team. For example, Simpson argues

that fraud investigators for AT&T and Verizon (the "principal complainants") are part of the prosecution team. The government opposes this request and argues that the prosecution team consists of members of the Federal Bureau of Investigation, the North Texas Regional Computer Forensics Lab, and the United States Attorney's Office. The government maintains that victims like AT&T and Verizon are not part of the prosecution and that at no time were AT&T, Verizon, or their fraud investigators government agents.

"*Brady* obligations extend to all persons 'acting on the government's behalf[.]'" *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). In some circumstances, the government is deemed to have the knowledge of persons who are not prosecutors in the case. The government must disclose any *Brady* evidence that is known by the prosecutorial team, which includes investigative and prosecutorial personnel. *See United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979). For example, if a state government works with the federal government on a case, the federal government is attributed the knowledge of the state government for purposes of *Brady* if the two governments "pooled their investigative energies to a considerable extent." *Id*. The question whether a non-prosecutor is part of the prosecutorial team for *Brady* purposes turns not on the person's status but on what the person did. *Stewart*, 433 F.3d at 298. For example, in *United States v. Morell*, 524 F.2d 550 (2d

Cir. 1975), the court imputed a law enforcement agent's knowledge to the prosecution where the agent supervised a witness, participated actively in the investigation, and frequently sat at counsel table throughout the trial. *Morell*, 524 F.2d at 555.

Simpson has cited no authority, however, that holds that knowledge of facts by a private company is imputed to the government for *Brady* purposes where "there is no claim that the government was willfully blind to exculpatory evidence that it should well have known was available." *United States v. Josleyn*, 206 F.3d 144, 153 n.8 (1st Cir. 2000). In fact, "[w]hile prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests." *Id.* at 154 (citation omitted). Therefore, the court holds that the government is only imputed with the knowledge that the government actually had and is not otherwise imputed with the knowledge of private companies or their fraud investigators for *Brady* purposes. *Id.*

B

*Simpson's Requests for Disclosure Nos. 1, 2, 4, and 5*

In request No. 1,[6] Simpson asks that the government disclose any information that Simpson did not knowingly participate in any

_____

[6]The court will address Simpson's specific requests in the order in which the government responded to them. The government did not respond to Simpson's request No. 7.

conspiracy to defraud, as alleged in the indictment, or that there is reason to doubt whether he participated in any unlawful conduct alleged in the indictment, either as a whole or in any of the particular instances alleged in the indictment. Specifically, Simpson requests any written or recorded statements favorable to and made by him to any non-law-enforcement person, including but not limited to, emails, instant messages, text messages, and/or recordings, including cassette recordings or any other non-digital recording or tape recording. In request No. 2, Simpson asks that the government disclose information that he has been involved in any business enterprises (including businesses named in the indictment) that have been successful, and during the course of which bills for products and services were incurred and paid. In request No. 4, Simpson moves the government to disclose information that Simpson's travels to Mexico and South America have been for legitimate business purposes, and that these travels put his businesses in competition, or advancing such competition, with any complainant in the case. And in request No. 5, Simpson requests disclosure of information that any payment made by him to any other person named in the indictment was for a lawful purpose, including information that the government believes would demonstrate a lawful purpose and information that would support the argument that any such payments were for a valid purpose.

The government responds that Simpson's requests are overbroad

and vague; his requests appear to include material covered by the Jencks Act, which the government is not required to disclose until trial; and the government has already provided Simpson with some documents, digital evidence, financial records, and audio recordings. The government also agrees to provide records to Simpson as they become available to the government and are generated in a searchable format.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot. To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

C

*Simpson's Request for Disclosure No. 3*

In request No. 3, Simpson asks that the government disclose information that the informants upon whom the government or principal complainants have relied during the investigation are unreliable or that could be used to support an assertion that any such informant is unreliable. The government responds that Simpson's request is overbroad, vague, and ambiguous; the victim companies are not agents of the government, and Simpson can subpoena and interview respondents of the principal complainants; and, to the extent Simpson requests Jencks Act material, the

government will produce that material when appropriate.

As explained above, *see supra* § VI(A), the court agrees that Simpson has not shown that the principal complainants are government agents. To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot.[7] To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the court denies the motion as exceeding what these authorities require. The government is not obligated to disclose Jencks Act materials except as specified *infra* in § IX.

D

*Simpson's Requests for Disclosure Nos. 6, 8, and 9*

In request No. 6, Simpson maintains that the government is aware of numerous factors (including its substantial commercial relationship with the companies) that constitute a basis on which he could claim that the government is biased in its representation of the principal complainants in this case, and the government should therefore be required to disclose any grounds and all

---

[7]If the government is required to disclose the identity of an informant who will not be used as a trial witness and whose identity it does not wish to disclose, it must advise the court by *in camera* submission no later than the date specified *infra* in § IX. The court will then conduct an *in camera* review and apply the three-prong test followed in this circuit to determine the applicability of the informant's privilege. *See United States v. De Los Santos*, 810 F.2d 1326, 1331 (5th Cir. 1987).

supporting evidence that demonstrates this relationship. In request No. 8, Simpson posits that the government is aware of numerous instances in which the complainants have been accused of fraud, deceptive conduct, and similar misconduct, including, but not limited to, accusations made by state and federal government agencies. He maintains that, like a person's criminal history, information concerning the corporate complainants should be disclosed, and that the government should be required to disclose all instances of alleged misconduct known, or that by exercise of due diligence would be known, to the government, or known to the ILECs. In request No. 9, Simpson asks that the government be required to disclose all accusations of anti-competitive conduct made against the ILECs.

The government responds that Simpson's request is overbroad, vague, and ambiguous; whether the government has conducted business with a victim company does not create a bias toward those companies or exculpate Simpson; and Simpson has access to the same public databases as the government, and the government has no duty to disclose evidence available to Simpson from other sources.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot. To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these

authorities require.

*Simpson's Request for Disclosure No. 7*

In request No. 7, Simpson asks that the government disclose the numerous grounds (and supporting evidence) on which a legitimate challenge regarding reliability can be made to the unpaid "invoices" produced by the complainants in this case, including allegations of overcharging, gouging, and misrepresentation made by any customers, any consumer protection group, and by any state (or any subdivision), federal, or municipal regulatory authority. The government has not responded directly to this request.

To the extent Simpson requests discovery that the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is granted. To the extent his requests exceed what is required by these authorities, the motion is denied.

F

*Simpson's Requests for Disclosure Nos. 10 and 11*

In request No. 10, Simpson asks that the government disclose information tending to indicate that Simpson did not have the intent not to pay for products and services at the time they were acquired, the requisite knowledge or intent to be guilty of any offense charged, or the specific intent to violate the law with

regard to any matter or transaction that is the subject of the indictment. In request No. 11, Simpson asks that the government disclose information indicating that any codefendant was not aware of any unlawful conduct on the part of Simpson, irrespective of whether the government rejected such information as inaccurate or of whether the person subsequently changed the statement.

The government responds that it is aware of its obligation under *Brady* and *Giglio* and that it has already turned over records in its possession. The government objects at this time to Simpson's requests insofar as he seeks information governed by the Jencks Act.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot. To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

G

*Simpson's Request for Disclosure No. 12*

In request No. 12, Simpson asks that the government disclose 18 subcategories of information that could be helpful or useful to the defense in detracting from the probative force of the government's evidence, including impeachment evidence and evidence of consideration held out to a witness, prospective witness,

complainant, or codefendant, and evidence that arguably could lead to such information. The government responds that several of Simpson's requests are overbroad and ambiguous and that it will comply with its obligations under Rules 12(b)(4), 16, and 26.2, the Rules pertaining to witnesses who testify, and the Jencks Act.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot. The court also expects the government to comply with its obligations under *Brady*, and *Giglio*. To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

H

*Manner of the Government's Disclosure*

Simpson argues that the government's disclosures must include a searchable database and a comprehensible index. He posits that the government has an obligation to provide evidence favorable to him in a manner that will be of value. According to Simpson, the government's production of 200 terabytes of digital data does not satisfy its obligation; rather, the government must immediately disclose the *specific location* of the potentially-exculpatory information——50 gigabytes identified by the government——and provide him with this evidence in a usable and searchable format. Simpson also argues that the government must disclose particular items or

categories of evidence favorable to him even if it discloses the 50 gigabytes. The government responds that it has provided searchable copies of certain documents and has met individually with counsel for the defendants to recommend where counsel focus their review efforts. For example, the government has suggested which hard drive or drives counsel should search. Defense attorneys have also been provided copies of the electronic storage devices.

Simpson cites *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *vacated in part on other grounds*, ___ U.S. ___, 130 S.Ct. 2896 (2010), to establish that the government must do more than open its file to him to satisfy its disclosure obligations. "As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *Id.* at 576 (citations omitted). A *Brady* violation will not be found where potentially exculpatory information is available to the defendant through an exercise of due diligence. *Id.* In *Skilling* the defendant argued that "the voluminosity of the government's open file prevented him from effectively reviewing the government's disclosure" and that "no amount of diligence, much less reasonable diligence, could have accomplished this task." *Id.* The panel noted that "[t]here is little case law on whether a voluminous open file can itself violate *Brady*, and the outcomes of these cases seem to turn on what the government does in addition to allowing access to a voluminous open file." *Id.* at 577. It also

stated that it was not holding "that the use of a voluminous open file can never violate *Brady*." *Id.*[8] But the panel found no *Brady* violation where the government "did much more than drop several hundred million pages on [the defendant's] doorstep." *Id.* The government's open file was electronic and searchable; the government produced a set of "hot documents" that it thought were important to its case or were potentially relevant to the defendant's defense; the government created indices to these and other documents; and it provided the defendant with access to various databases concerning prior litigation involving his company. *Id.* The panel noted that "there is no evidence that the government found something exculpatory but hid it in the open file with the hope that [the defendant] would never find it." *Id.*

_____

[8]For instance, the panel stated in *dicta*:

> evidence that the government 'padded' an open
> file with pointless or superfluous information
> to frustrate a defendant's review of the file
> might raise serious *Brady* issues. Creating a
> voluminous file that is unduly onerous to
> access might raise similar concerns. And it
> should go without saying that the government
> may not hide *Brady* material of which it is
> actually aware in a huge open file in the hope
> that the defendant will never find it. These
> scenarios would indicate that the government
> was acting in bad faith in performing its
> obligations under *Brady*.

*Skilling*, 554 F.3d at 577.

> [C]onsidering the additional steps the
> government took beyond merely providing [the
> defendant] with the open file, the equal
> access that [the defendant] and the government
> had to the open file, the complexity of [the
> defendant's] case, and the absence of evidence
> that the government used the open file to hide
> potentially exculpatory evidence or otherwise
> acted in bad faith, . . . the government's use
> of the open file did not violate *Brady*.

*Id.* In Simpson's case, the government has acknowledged its obligations to comply with *Brady* and *Giglio*, and it has taken additional steps, described above, some of which are of the type cited with approval in *Skilling*, to facilitate Simpson's review of the evidence. The court concludes that Simpson is entitled to no greater relief.[9]

VII

*Request for Notice under Rule 12(b)(4)*

Simpson moves for notice of the government's intent to use evidence pursuant to Rule 12(b)(4)[10] and the source from which the

---

[9]Simpson also argues that the government sometimes responds to *Brady* requests in a manner that evades joinder of the issue, such as by saying that the government understands its duties under *Brady* and will comply with these duties. He maintains that, if the government believes that production of a requested item or category of items is not required, it should say so, and the court should enter an order that rules on Simpson's specific requests. If Simpson has a basis to challenge a particular item or category of items, he may make this request of the court; otherwise, the motion is denied as unsupported by the requirements of *Brady*.

[10]Rule 12(b)(4)(B):

> At the arraignment or as soon afterward as
> practicable, the defendant may, in order to
> have an opportunity to move to suppress

evidence was obtained.  In response, the government agrees to comply with the court's scheduling order and Rule 12(d)(2)[11] by filing an exhibit list that identifies all items that the government intends to use in its case-in-chief.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot.  The government must provide discovery under Rule 12(b)(4) no later than March 31, 2011 at noon.  The motion is denied to the extent Simpson seeks discovery of information in excess of what is required by Rule 12(b)(4).

No later than April 8, 2011 at noon, Simpson may file—without leave of court—a motion to suppress that he could not reasonably have filed until he received the government's disclosure under Rule 12(b)(4).

## VIII

### *Motion for Discovery and Inspection*

Simpson moves for discovery and inspection of six categories of material.  The government agrees to comply with the applicable

---

evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

[11]There is no Rule 12(d)(2).  The court assumes that the government agrees to comply with Rule 12(b)(4), the local rules, and the court's order.

rules and cases and objects to Simpson's motion to the extent it exceeds what is required by Rule 16, *Brady*, and *Giglio*.

A

*Simpson's Requests for Disclosure Nos. 1 and 2*

In request No. 1, Simpson requests that the government disclose FBI Form 302s for each oral statement that the government disclosed to Simpson. According to Simpson, an FBI 302 report would reflect when and where an interview occurred, by whom it was conducted, the persons present, when the report was dictated, and when it was transcribed. Simpson concedes that the government has provided his oral statements but argues that he is entitled to Form 302 reports for any interviews with him. In request No. 2, Simpson asks that the government disclose his written or recorded statements, as required by Rule 16(a)(1)(B). Simpson acknowledges that the government has produced some statements.

The government maintains that Rule 16 requires that it provide Simpson's written or recorded statements and the substance of his oral statements made in response to interrogation by a person he knew was a government agent. The government also contends that Form 302 reports are not materials covered by the Jencks Act unless they are specifically approved or adopted by a non-agent witness.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot. To the extent Simpson requests discovery of more than the government is required

to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.  Specifically, the court rejects Simpson's request to the extent it presumes that an FBI Form 302 is always a statement as defined by Rule 26.2(f) or the Jencks Act.

B

*Simpson's Request for Disclosure No. 3*

In request No. 3, Simpson asks that the government disclose any scientific or technical reports, photographs, or examinations, as required by Rule 16(a)(1)(F).  The government agrees to comply with Rule 16(a)(1)(F).  To the extent Simpson's motion exceeds the scope of that Rule, the government objects.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot.  The court also expects the government to comply with its obligations under *Brady* and *Giglio*.  To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

C

*Simpson's Request for Disclosure No. 4*

In request No. 4, Simpson asks that the government provide a written summary pursuant to Rule 16(a)(1)(G) of the evidence it intends to offer under Rules 702, 703, or 704 during its case-in-

chief.

To the extent the government has agreed to the production Simpson seeks, the court denies the motion as moot. The court also expects the government to comply with its obligations under *Brady* and *Giglio*. To the extent Simpson requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

D

*Simpson's Request for Disclosure No. 5*

In request No. 5, Simpson asks that the government disclose the application and supporting documents submitted to the court with the government's September 9, 2009 motion for post-indictment restraining order. The court unsealed the application and supporting documents on October 28, 2010. Simpson's motion is therefore denied in this respect as moot.

E

*Simpson's Request for Disclosure No. 6*

In request No. 6, Simpson requests discovery of documents with Bates stamps beginning with 792, 793, and 795. The government avers that it has complied with Simpson's request. Simpson's motion is denied in this respect as moot.

Except to the extent that the Jencks Act and Rule 26.2(a) permit later disclosure, or the court has set an earlier deadline for disclosure under Rule 12(b)(4), the government must comply no later than April 25, 2011 at noon with its disclosure and discovery obligations imposed by this memorandum opinion and order and by the government's agreement to produce what Simpson has requested. Concerning material covered by the Jencks Act or Rule 26.2, in accordance with the custom in this district, the government must disclose such statements no later than the end of the business day that precedes the date on which Simpson will begin his cross-examination of a witness.

**SO ORDERED.**

March 21, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE