IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:09-CR-249-D(06) |
| VS. | § | |
| | § | |
| MATTHEW NORMAN SIMPSON, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Matthew Norman Simpson ("Simpson") has filed several motions challenging the third superseding indictment ("indictment"). He also seeks dismissal on double jeopardy grounds, an order unsealing government motions, and alternative relief in the form of a severance of count seven. For the reasons that follow, the court grants his motions to dismiss counts four and six, and grants his alternative motion to strike surplusage from the indictment to the extent of striking one alleged overt act charged in the conspiracy count. The court denies his motions in all other respects.

I

Simpson is charged in the indictment with five separate offenses: in count one with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; in count two with fraud and related activity in connection with electronic mail, in violation of 18 U.S.C.

§ 1037(a)(2) and (b)(2)(C)[1]; in count four with obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(c)(1); in count six with obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(k); and in count seven with false registration of a domain name, in violation of 18 U.S.C. § 3559(g)(1).[2] Simpson has filed several motions seeking relief with respect to the indictment.[3] The government opposes the motions.[4]

---

[1]The count also charges that he is guilty of this offense as an aider and abettor under 18 U.S.C. § 2.

[2]The indictment also contains a forfeiture notice in which Simpson's assets are alleged to be subject to forfeiture upon a conviction on any of the counts other than count seven, the false registration count.

[3]The following motions are decided in this memorandum opinion and order: April 4, 2011 motion to dismiss the indictment on grounds of duplicity and multiplicity; April 4, 2011 motion to dismiss the indictment on grounds that it is not a plain, concise, and definite written statement of the essential facts constituting the offense charged and is consequently vague and overly broad and fails to state an offense and, alternatively, to strike surplusage in the indictment; April 4, 2011 motion to dismiss count two; April 4, 2011 motion to dismiss count four; April 4, 2011 motion to dismiss count six; April 4, 2011 motion to dismiss count seven of the indictment and, alternatively, to sever count seven; April 4, 2011 motion to dismiss on double jeopardy grounds; and April 12, 2011 motion to unseal all sealed government motions for production of documents and all sealed orders granting or denying such motions and for provision to the defendant of all documents obtained by sealed motion and order following indictment.

[4]The grand jury is authorized, of course, to return a fourth superseding indictment any time before the trial commences. *See, e.g., United States v. Trahan*, 333 Fed. Appx. 818, 819 (5th Cir. 2009) (per curiam) (noting the "long-standing authority holding that a superseding indictment may be filed any time before trial on the merits"); *United States v. Millet,* 559 F.2d 253, 257-58 (5th Cir. 1977) ("This Court has held that a super[s]eding indictment may be returned at any time before a trial on the merits."). To the extent the court identifies in this memorandum opinion and order defects in the indictment that are curable, the government may opt to seek a fourth superseding indictment that removes the deficiencies in the indictment.

## II

### *Legal Principles Regarding Indictments*

Because several of Simpson's motions challenge the indictment, the court begins by reviewing pertinent legal principles.

Under Fed. R. Crim. P. 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."  When applying this standard, common sense should prevail over technicalities.  *See* 1 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 123, at 522-23 (4th ed. 2008).  In each count, the indictment "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."  Rule 7(c)(1).  "A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means."  *Id.*

> Rule 7 put an end to "the rules of technical and formalized pleading which had characterized an earlier era."  The complex requirements of common law criminal pleading are now obsolete, harmless imperfections of form are now disregarded, and the fine detail previously demanded at the pleading stage is not longer required.

1 Wright & Miller, *supra*, § 123, at 521-22 (quoting *Russell v. United States*, 369 U.S. 749, 762 (1962)).  Rule 7(c)(1) "is designed to simplify indictments by eliminating unnecessary phraseology which needlessly burdened many indictments under the former practice." *United States v. Debrow*, 203 F.2d 699, 701-02 (5th Cir.), *rev'd on other grounds*, 346 U.S. 374

(1953); *see also United States v. Smith*, 228 F. Supp. 345, 347 (E.D. La. 1964) ("To require an[] extensive recitation of facts in the indictment itself would be favoring form over substance and would ignore both the wording of Rule 7(c) and the intent to simplify the form of indictment expressed by the Advisory Committee on Federal Criminal Rules.").

"Rule 7 eliminates the necessity for the inclusion in an indictment of many of the technical and prolix averments which were required at common law[.]" *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) (en banc).  The drafters of Rule 7(c) aimed to prevent "horrible examples of prolix indictments," to allow simpler indictments, and to eliminate technicalities in the official forms previously required.  *United States v. Trinastich*, 354 F. Supp. 54, 57 (W.D. Mo. 1973) (internal quotation marks and citation omitted); *see also United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982) (noting that Rule 7(c) was designed to eliminate prolix indictments and to encourage simplicity in procedure); *United States v. Linderman*, 20 F.R.D. 459, 460 (D. Mont. 1957) (explaining that the Rule 7(c) requirements for an indictment "constitute[] a compromise between the old prolix document and the extremely short form" (internal quotation marks and citation omitted)).  One matter of concern presented by a verbose and unnecessarily long indictment is that its length may make it impossible or extremely difficult for the defendant to decipher the charges against him or to assert a bar to subsequent prosecutions for the same offense.  *See, e.g., United States v. Strauss*, 285 F.2d 953, 955 (5th Cir. 1960) (affirming dismissal of indictment where it was impossible for court to discover in an extremely verbose indictment a plain, concise, and definite written statement of the essential facts constituting the offense charged); *United*

*States v. Sanders*, 266 F. Supp. 615, 621 (W.D. La. 1967) (addressing motion for severance and noting from facts stated in indictment and government brief that it would be extremely difficult or impossible for defendants to separate proofs as to each count of 50-page prolix and redundant indictment as to each defendant); *United States v. Heinze*, 361 F. Supp. 46, 56 (D. Del. 1973) (holding prolix indictment to be so vague, indefinite, and unclear that it was fatally defective under Rule 7(c) because it failed to inform defendant of the nature and cause of the accusation against him and because it was too unclear to provide defendant protection against being put in jeopardy twice for same offense). Generally "[a]n indictment that is otherwise good will rarely fail because the drafter was too wordy or long winded." 1 Wright & Miller, *supra*, § 125, at 571.[5]

But even if an indictment is lengthy and needlessly verbose, Rule 7(c) does not mandate that it be dismissed. Instead, the defendant's proper recourse is to file a motion to strike surplusage from the indictment. *See, e.g., United States v. McDermot*, 58 F.3d 636, at *5 (5th Cir. 1995) (unpublished opinion) (affirming denial of motion to dismiss indictment as needlessly wordy because defendant cited no authority to support argument that needlessly verbose indictment required dismissal and in light of "ample authority clarifying that a defendant's remedy in the face of a needlessly wordy indictment is a motion to strike

---

[5]The United States Attorneys' Manual directs that "a mail fraud or wire fraud indictment should contain a reasonably detailed description of the particular scheme the defendant is charged with devising to ensure that the defendant has sufficient notice of the nature of the offense." *See* Dep't of Justice, *United States Attorneys' Manual* § 9-43.100, *Criminal Resource Manual* at 971 (1997) ("USAM"), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/title9.htm.

surplusage under Rule 7(d)." (citation omitted)); *United States v. N.Y. Great Atl. & Pac. Tea Co.*, 137 F.2d 459, 462-63, 465 (5th Cir. 1943) (decided prior to Rule 7(c)) (reversing dismissal of indictment because, although indictment was too wordy to be a good pleading, it "has the fault not of vagueness and indefiniteness, but of a too detailed pleading of evidence," which did not affect validity of indictment); *United States v. Rehak*, 2008 WL 2828886, at *8 (D. Minn. July 21, 2008) (denying motion to strike surplusage and noting that "while such verbose indictments are not the norm, the Court cannot say they are unheard of, especially in cases alleging a fraudulent scheme."); *United States v. Pilnick*, 267 F. Supp. 791, 795 (S.D.N.Y. 1967) (holding that although indictment was wordy and hardly a model pleading, it was sufficient to withstand motion to dismiss because conspiracy and scheme charged were sufficiently set forth to apprise defendant of crimes charged and enable him to assert bar to subsequent prosecutions for same offense).

"The foundational requirement[] of the indictment or information is that it give the defendant fair notice of the charges against him, which means in part that every element of the charged offenses must be stated." 1 Wright & Miller, *supra*, § 123, at 523. Each count must be evaluated separately. *Id.* at 524. The defendant is guaranteed by the Sixth Amendment "to be informed of the nature and cause of the accusation" against him. 1 Wright & Miller, *supra*, § 125, at 542. An indictment has two purposes. First, it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Id.*; *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (noting that one "constitutional requirement[] for an indictment [is] that it contain[]

the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend"). Second, the indictment "enables [a defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense." 1 Wright & Miller, *supra*, § 125, at 542; *see also Resendiz-Ponce*, 549 U.S. at 108 (noting that second constitutional requirement is that indictment "enable[] [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense."). "[T]o be sufficient, an indictment must . . . allege[] every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in a subsequent proceeding." *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008).

To determine whether an indictment serves these purposes and is therefore sufficient, the court should consider the indictment in its entirety and be guided by common sense and practical considerations. *See* 1 Wright & Miller, *supra*, § 125, at 545. The indictment must allege every essential element of the offense charged, and the allegations must be direct rather than left to inference. *See id.* at 546-47. An indictment that alleges only the statutory language of the offense charged is "permissible only if either the language itself gives sufficient notice to the accused, or if the language is accompanied by 'such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e.'" *Id.* at 549 (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)).

In sum, "[a]n indictment adequately charges an offense if it (1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future

prosecutions." *United States v. McBirney*, 2006 WL 2432675, at *8 (N.D. Tex. Aug. 21, 2006) (Fitzwater, J.) (internal quotation marks and citation omitted), *aff'd*, 261 Fed. Appx. 741 (5th Cir. 2008). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986). "Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks and citations omitted); *see also United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991). Thus "[a]n indictment, so long as it adequately apprises the defendant of the charge against him and is specific enough to prevent double jeopardy, will not be dismissed unless it fails to contain the essential elements of the offense charged." *United States v. Miller*, 17 F.R.D. 486, 488 (D. Vt. 1955).

Objections to the indictment, besides an objection that the indictment fails to show jurisdiction or to allege a crime, must be raised by motion prior to trial or they are waived. 1 Wright & Miller, *supra*, § 123, at 530-31; *see* Rule 12(e).

III

*Motion to Dismiss the Indictment on Grounds of*
*Duplicity and Multiplicity*

Simpson moves to dismiss the indictment on the grounds of duplicity and multiplicity.

A

In the instant indictment, directly under the caption[6] for count one, the first paragraph
states: "[t]he Grand Jury realleges and incorporates the Introduction and Counts Two through
Eight of the Third Superseding Indictment." Indictment at 13, ¶ 1. Similarly, under the
captions for counts two, three, four, five, and six, the first paragraph states: "[t]he Grand Jury
realleges and incorporates the Introduction and Count One of the Third Superseding
Indictment." Indictment at 52, ¶ 1; *id.* at 57; *id.* at 58 *id.* at 59; *id.* at 60. The caption and the
citation sentence[7] of each count indicate the offense charged in that count. *See, e.g.,*
Indictment at 58 (count four caption charges "Obstruction: Destruction of Evidence (18
U.S.C. § 1512(c)(1))," and citation sentence charges "[i]n violation of 18 U.S.C.
§ 1512(c)(1)."). In a motion that tends to oversimplify how the prohibitions against duplicity
and multiplicity are to be applied, Simpson maintains that, because count one of the
indictment expressly incorporates counts two through eight, and because counts two, three,
four, five, and six expressly incorporate count one, counts one through six are duplicitous
because they charge multiple offenses, and counts one through six are multiplicitous because

---

[6]The court's use of the term "caption" is consistent with the USAM. *See* USAM,
*supra*, § 9-12.000, *Criminal Resource Manual* at 216 (noting that caption is not part of the
body of the indictment); *see also Stillman v. United States*, 177 F.2d 607, 610-11 (9th Cir.
1949) (referring to opening language in the indictment as "caption") .

[7]The court derives the term "citation sentence" from Rule 7(c)(1), which provides, in
relevant part: "For each count, the indictment or information must give the official or
customary citation of the statute, rule, regulation, or other provision of law that the defendant
is alleged to have violated." The citation sentence in each count of the instant indictment
cites the statute that the defendant or defendants are alleged to have violated.

each offense is charged in more than one count.[8]

The government responds that a count is not multiplicitous where the same act or transaction constitutes a violation of two distinct statutory provisions and each alleged offense requires proof of a fact that the other does not; that each challenged count clearly delineates a specific and separate offense; and that the mere incorporation by reference of a conspiracy count into a substantive count does not constitute multiplicity. The government maintains that an indictment is not duplicitous if it can be read to charge only one violation in each count; that the allegation in a single count of conspiracy to commit several crimes is not duplicitous; and that each challenged count clearly delineates a specific and separate offense. It also contends that the court will instruct the jury and clearly identify what is required to find guilt. The government also posits that Rule 7(c)(1) specifically allows allegations from one count to be incorporated by reference into another count, and that dismissal is unwarranted because the court can instruct the jury or it can strike the language

---

[8]Simpson correctly maintains that he must challenge the multiplicity or duplicity of the indictment prior to trial. *See, e.g., United States v. Tucker*, 345 F.3d 320, 337 (5th Cir. 2003). Rule 12(e) "plainly states that a party who fails to raise defenses and objections based on defects in the indictment prior to trial waives the objections, unless good cause is shown." *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir. 1983) (citing Rule 12(f), the precursor to current Rule 12(e), and refusing to consider defendants' duplicity claims raised for the first time after trial). Rule 12(e) provides that a party waives "any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver." Rule 12(b)(3) defenses and objections include "a motion alleging a defect in the indictment or information[.]" Rule 12(b)(3)(B).

from each count that "realleges and incorporates" another count or counts.[9]

Simpson replies that the indictment is fatally flawed because additional, distinct offenses are included in the same count, not because certain overlapping facts are incorporated from one offense to another. He disagrees with the government that this is a case of the same act violating different statutes or where a conspiracy to commit several crimes is alleged. Simpson maintains that the indictment is both duplicitous and multiplicitous because one count incorporates the violation alleged in another count.

B

An indictment suffers from duplicity when two or more distinct and separate offenses are joined in a single count. *See* 1A Wright & Miller, *supra*, § 142, at 7. "'An indictment may be duplicitous if it joins in a single count two or more distinct offenses.'" *United States v. Baytank, Inc.*, 934 F.2d 599, 608 (5th Cir. 1991) (citing *United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982)). "'[T]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not.'" *United States v. Tucker*, 345 F.3d 320, 337 (5th Cir. 2003) (quoting *United States v. Reedy*, 304 F.3d 358, 363 (5th Cir.

---

[9]The government does not cite authority for the assertion that the court can strike language from the indictment absent a defendant's motion. Rule 7(d) expressly permits the court to strike language in the indictment on the defendant's motion. And at least one court has held that the court is not permitted to strike language in the indictment *sua sponte*. *See United States v. King*, 174 Fed. Appx. 467, 469 (11th Cir. 2006) (per curiam) ("The Federal Rules of Criminal Procedure do not permit the district court to strike surplusage except on a motion by the defendant.").

2002)).[10]  But when the indictment charges a conspiracy, it can allege in a single count a conspiracy to commit several crimes without being duplicitous because "'[t]he conspiracy is the crime, and that is one, however diverse its objects.'"  *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir. 1983) (citing *Braverman v. United States*, 317 U.S. 49, 54 (1942)).

"In determining whether an indictment is duplicitous, a court must assess whether the indictment *can be read* to charge only one violation in each count."  *United States v. Roman*, 2010 WL 3294221, at *1 (W.D. Tex. Aug. 19, 2010) (emphasis added) (citing *United States v. Sharpe*, 193 F.3d 852, 865 (5th Cir. 1999)).

> The Fifth Circuit distinguishes between "acts" and "offenses" for the purposes of assessing duplicity; more than one "act" may be included within a single count if the acts represent a single, continuing scheme and (1) the indictment adequately notifies the defendant of the charges pending; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendants to be convicted by a single, non-unanimous verdict.

*Id.* (citing *Sharpe*, 193 F.3d at 870).  Even if the court determines that the indictment is duplicitous because it charges two or more separate and distinct offenses in one count, and that the indictment cannot be read to charge only one offense in each count, "this flaw *does not require dismissal* of the indictment."  1A Wright & Miller, *supra*, § 145, at 94 (emphasis added).  Rather, the court may "require the government to elect the single count on which it

---

[10]"The vice of duplicity is that there is no way for a jury to convict on one offense and acquit on another offense contained in the same count."  1A Wright & Miller, *supra*, § 142, at 7.  And a "general verdict of guilty will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other."  *Id.*

plans to rely, and as long as the evidence at trial is limited to only one of the charges in the duplicitous count, the defendant's challenge is likely to fail." *Id.* at 94-95. Additionally, the risk that the jury will convict without unanimity on a single charge can be eliminated "if the court instructs the jury that it must find unanimously that the defendant was guilty with respect to at least one distinct act." *Id.* at 95. Thus the court's instruction to the jury that, to convict the defendant of a particular offense, it must find unanimously that the defendant committed one distinct act is sufficient to ameliorate any potential prejudice to the defendant of a duplicitous indictment.

## C

An indictment suffers from multiplicity if a single offense is charged in several counts. *See* 1A Wright & Miller, *supra*, § 142, at 10.[11] But one *act* by the defendant can constitute a violation of several distinct statutes. *See United States v. Maggitt*, 784 F.2d 590, 599 (5th Cir. 1986) (noting that one *act* by the defendant may "violate two or more statutes and constitute independent offenses."). And an indictment charging several offenses for the

---

[11]One danger inherent in a multiplicitous indictment is that, upon conviction, the defendant may be punished multiple times for the same offense, which raises double jeopardy concerns. *See United States v. Reagan*, 596 F.3d 251, 253 (5th Cir. 2010) ("An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the Fifth Amendment double jeopardy clause." (citation omitted)); *Reedy*, 304 F.3d at 363 ("The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." (internal quotation marks and citation omitted)). Additionally, the indictment's implication that several crimes have been committed (where only one crime is alleged but is repeated in several counts) may have an adverse psychological effect on the jury. *See United States v. Smith*, 591 F.2d 1105, 1108 (5th Cir. 1979).

same acts is not multiplicitous where conviction under each statute allegedly violated requires "proof of an additional fact which the other does not." *Tucker*, 345 F.3d at 337 (quoting *Reedy*, 304 F.3d at 363).

Like duplicity, multiplicity is not fatal to the indictment and does not require that the court dismiss the indictment. *See* 1A Wright & Miller, *supra*, § 145, at 98; *United States v. Alexander*, 2008 WL 4790125, at *2 (W.D. La. Oct. 31, 2008) ("[M]ultiplicity itself does not require dismissal of an indictment." (citing *United States v. Smith*, 591 F.2d 1105, 1108 (5th Cir. 1979))).  Rather, the "[d]efendant can move to have the prosecution elect one of the counts and to have the other counts dismissed," which is within the court's discretion. 1A Wright & Miller, *supra*, § 145, at 98-100; *see also United States v. Saks*, 964 F.2d 1514, 1526 (5th Cir. 1992) (vacating and remanding defendant's conviction and sentence on grounds of multiplicity and remanding case and directing the government to elect the count it wishes to leave in effect).

The practice of charging a single offense in several counts is discouraged by the Federal Rules of Criminal Procedure, but is nonetheless permissible. *Id.* (citing 1A Wright & Miller, *supra*, § 142, at 11-12); *see Smith*, 591 F.2d at 1108 ("One authority takes the position that charging a single offense in several counts remains permissible, but the federal rules of procedure are designed to discourage the practice.").  Curative jury instructions also "may under some circumstances adequately avoid prejudice to a defendant faced with multiplicitous counts[.]" *United States v. Polizzi*, 257 F.R.D. 33, 37 (E.D.N.Y. 2009) (noting that "once the impression of enhanced criminal activity is conveyed to the jury, the risk

increases that the jury will be diverted from a careful analysis of the conduct at issue, and will reach a compromise verdict or assume the defendant is guilty." (emphasis, internal quotation marks, and citation omitted)).

## D

Simpson has not established that the indictment as framed suffers from multiplicity or duplicity. He cites generally to the prohibitions against multiplicity and duplicity and argues that the indictment suffers from both by realleging and incorporating other counts. Nor has the court has found any authority that compels the conclusion that this practice renders the indictment multiplicitous or duplicitous in any respect. The court has located several cases, however, that appear to treat the incorporation of *another count* as if were incorporating *the facts alleged* in the other count.[12] And although the indictment could have

<hr>

[12]*See, e.g., United States v. McBrown*, 149 F.3d 1176, at *3 (5th Cir. 1998) (unpublished table decision) ("The conspiracy count *incorporated by reference each of the other counts* as overt acts of the conspiracy." (emphasis added); *United States v. Hajecate*, 683 F.2d 894, 901 (5th Cir. 1982) ("But this court long ago held that while the specificity required in an indictment can be achieved by *incorporation of another count*, this incorporation must be express, not implicit." (emphasis added)) ; *United States v. Bright*, 630 F.2d 804, 832 (5th Cir. 1980) (noting that count two incorporated by reference count six); *Davis v. United States*, 357 F.2d 438, 440 n.2 (5th Cir. 1966) ("The requisite specificity [of an indictment] can be achieved by *incorporation of another count*, but this must be expressly done." (emphasis added)); *United States v. Davison*, 555 F.2d 1376, 1377 (9th Cir. 1977) ("The *incorporation of counts* by reference is permitted by Rule 7(c)(1)[.]" (emphasis added)); *Parker v. United States*, 252 F.2d 680, 681 (6th Cir. 1958) (per curiam) ("With regard to [defendant's] contention that the counts on which he was sentenced refer to a count which was dismissed, it is the rule that the dismissal of a count does not necessarily vitiate later counts making reference to it, if the reference is sufficiently full to incorporate the matter in the later counts."); *United States v. Carriles*, 2010 WL 300357, at *2 (W.D. Tex. Jan. 20, 2010) ("Moreover, nothing in Count Three, Counts One and Two (*incorporated by reference* into Count Three) or the preamble identify [information.]" (emphasis added)).

been framed in a way to avoid this issue—i.e., by explicitly stating that the factual allegations were being incorporated from one count to another[13]—it can be read to support the conclusion that the grand jury intended to do precisely that. For example, the introduction to the indictment precedes all counts and does not itself charge a crime, so the grand jury must have intended to rely on its factual allegations when charging other crimes.

The controlling question is whether the indictment can be read to in a way that it is neither duplicitous or multiplicitous. The court holds that it can. The caption and the citation sentence in each count show that the count charges *one offense* in violation of *one statute*.[14] For example, although in count one "[t]he Grand Jury realleges and incorporates the Introduction and Counts Two through Eight of the [indictment]," Indictment at 13, ¶ 1, count one can be read to charge only conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349, as noted in the caption and in the citation sentence, which charges that

_____

[13]This problem can be avoided when an indictment is framed like one that the USAM cites with approval. For example, the USAM cites *United States v. Scurlock*, 52 F.3d 531 (5th Cir. 1995), noting that "[t]he device of incorporating *material* from other counts is useful to avoid repetition such as is typical in fraud, conspiracy, and bankruptcy cases." USAM, *supra*, § 9-12.000, *Criminal Resource Manual* at 218. In *Scurlock* two counts in the indictment that charged the offenses of mail fraud incorporated by reference "the factual description set forth" in a prior count charging conspiracy to commit mail fraud. *See Scurlock*, 52 F.3d at 538.

[14]By virtue of the captions and citation sentences, Simpson and his codefendants have sufficient notice of the offense charged in each count. Thus "[n]o possible confusion could have been created in the defendant[s'] minds as to what the charges were that had been brought against them and as to what the allegations were that they would be required to defend against upon trial." *United States v. Vanderpool*, 528 F.2d 1205, 1207 (4th Cir. 1975). "After all, the purpose of the indictment is to *inform fully the defendant of the charge against him*. This indictment met that test." *Id.* at 1206-07 (emphasis added).

the alleged acts occurred "[i]n violation of 18 U.S.C. § 1349[.]"  Indictment at 51.[15]  And although counts two through six reallege and incorporate the introduction and count one, each count clearly charges one particular offense in its caption and citation sentence.  On the same basis, the indictment can be read to allege each offense in only one count.

Moreover, the facts alleged in each respective count correspond to the offense charged in the caption and citation sentence for that count.  For example, Simpson is charged in count four with "Obstruction: Destruction of Evidence," in violation of 18 U.S.C. § 1512(c)(1).  Indictment at 58.  18 U.S.C. § 1512(c)(1) makes it a violation to "corruptly alter[], destroy[], mutilate[], or conceal[] a record, document, or other object, or attempt[] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding[.]"  Under the caption of count four, the indictment realleges and incorporates the introduction and count one of the indictment, and in the next paragraph it alleges facts in support of the charge that Simpson violated this statute.  The indictment alleges that Simpson knowingly and corruptly destroyed and attempted to destroy email and other electronic data by deleting that data from his computer and other storage devices with the intent to impair their integrity and availability for use in the criminal investigation.  The charging sentence states: "[i]n violation of 18 U.S.C. § 1512(c)(1)."  Thus count four can be read to charge Simpson only with obstruction of justice, and not with conspiracy to commit wire and mail fraud.

---

[15]The citation sentence reads in full: "[i]n violation of 18 U.S.C. § 1349 (18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud))," because in this way it alleges the underlying substantive offenses that are the objects of the alleged conspiracy. *See* Indictment at 51.

Finally, the court can eliminate the potential for jury confusion and prejudice to Simpson and the other defendants by appropriate jury instructions. By instructing the jury regarding the essential elements of each offense, the court will avoid the vices associated with duplicity and multiplicity.

Accordingly, the court denies Simpson's motion to dismiss on grounds of multiplicity and duplicity.

IV

*Motion to Dismiss the Indictment and, Alternatively,*
*to Strike Surplusage*

Simpson moves to dismiss the indictment[16] on the grounds that it is not a plain, concise, and definite written statement of the essential facts constituting the offense charged and is consequently vague and overly broad and fails to state an offense and, alternatively, to strike surplusage in the indictment.

A

Simpson contends that count one should be dismissed because it lacks a definite statement and fails to state an offense in a clear, definite, and concise manner. He argues generally that the indictment it is not a plain, concise, and definite written statement of the essential facts constituting the offense charged and that it is vague and overly broad. Reduced to its essence, his contention is this: count one alleges a conspiracy to commit mail and wire

---

[16]Although Simpson's motion is styled "motion to dismiss the indictment," the body of his motion only discusses his motion to dismiss count one. The court therefore views Simpson's motion as a motion to dismiss count one.

fraud by devising a scheme to defraud unspecified entities over a seven year period; the entities he is charged with defrauding are part of the gravamen of the offense; but the indictment refers to these entitles only generically and indefinitely as "telecommunications companies, the lessors of real property, financial institutions, equipment leasing companies, creditors, credit reporting agencies, and service providers." Indictment at 14, ¶ 2. Simpson specifically contends that the indictment's reference to numerous unnamed businesses improperly includes the entire universe of commercial entities, and that it is imprecise to the point that it does not state an offense; that if it is assumed that count one states an offense, it should be dismissed because it fails to do so in a plain, concise, and definite manner; and that an indictment that is framed so that the gravamen of the alleged conspiracy is vague and overly broad violates due process and the right to be tried only on an indictment returned by the grand jury, because it permits the prosecution to fill in the blanks with respect to unnamed entities at trial.

The government does not appear to respond specifically to this argument.

B

Simpson has not shown that count one of the indictment should be dismissed on this basis. An indictment that tracks the language of the relevant statute is generally sufficient if it is "'accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *United States v. Adams*, 314 Fed. Appx. 633, 641 (5th Cir. 2009) (per curiam) (quoting *United States v. Quinn*, 359 F.3d 666, 672-73 (4th Cir. 2004)). The indictment

adequately charges an offense if it "'(1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions.'" *McBirney*, 2006 WL 2432675, at *8 (quoting *United States v. Parasiris*, 85 Fed. Appx. 380, 381 (5th Cir. 2004) (per curiam) (unpublished opinion)), *aff'd*, 261 Fed. Appx. 741 (5th Cir. 2008). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Gordon*, 780 F.2d at 1169.

The court need not dismiss an indictment simply because it is long, or because it contains more than a recitation of the essential elements of the offense. As discussed in § II, Rule 7(c) was intended to eliminate the *necessity* of lengthy and technical indictments based on official forms. Although prolix indictments can be problematic, *see id.* and cases discussed, Simpson has cited no authority for the premise that Rule 7(c) *forbids* lengthy indictments *per se*, or that the proper remedy for an unnecessarily lengthy indictment is dismissal. Rather, as long as the indictment conforms to minimal constitutional standards, a wordy or lengthy indictment will survive a motion to dismiss; that is, as long as the indictment apprises the defendant of the offense with which he is charged and enables the him to assert a bar to subsequent prosecution for the same offense, the court should not dismiss the indictment. The defendant's proper recourse for an unnecessarily lengthy indictment is to move to strike surplusage, not to move for dismissal of the indictment. *See McDermot*, 58 F.3d 636, at *5.

The identity of the alleged victim is not an essential element of conspiracy to commit wire or mail fraud. "Although the offense of wire fraud requires a victim, the victim need not be named in the indictment." *United States v. Valencia*, 2006 WL 3716657, at *4 (S.D. Tex. Dec. 14, 2006), *aff'd*, 600 F.3d 389 (5th Cir. 2010). In the case of mail fraud (and by extension the analogous statute proscribing wire fraud), this is because "[t]he focus of the mail fraud statute is upon the use of the mail to further a scheme to defraud, not upon any particular kind of victim." *United States v. Hatch*, 926 F.2d 387, 392 (5th Cir. 1991) (affirming denial of defendant's motion to dismiss where defendant argued that failure to identify proper legal victim violated his due process rights by hindering his ability to prepare defense). Moreover, the language of which Simpson complains does not render count one so general that it fails to state an offense against him. In fact, the remainder of the introduction and the contents of count one name numerous alleged victims of the conspiracy charged and give many additional and specific details regarding the alleged conspiracy. And on February 8, 2010 the government filed a Rule 12.4 notice that lists 47 victims of the alleged conspiracy.

Count one is therefore sufficient. It tracks the language of 18 U.S.C. § 1349, which provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Count one charges a

conspiracy to commit an offense prohibited by 18 U.S.C. §§ 1341 and 1343.[17]  Count one

also alleges the manner and means of the conspiracy and numerous overt acts committed in

furtherance of the conspiracy.  *Id.* at 14-51, ¶¶ 3-151.  And it adequately alleges the essential

elements of a conspiracy [18] to commit the underlying substantive offenses of wire[19] and mail

---

[17]In count one, the grand jury alleges:

> From at least in or about March 2003 and continuing through in or about January 2010, in the Dallas Division of the Northern District of Texas and elsewhere, [defendants] and others known and unknown to the Grand Jury did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree among themselves, with each other, and with other persons known to the Grand Jury, to commit offenses against the United States, to wit: to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and did knowingly 1) place and cause to be placed in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service, and deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and 2) transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds; for the purposes of executing such scheme and artifice to defraud telecommunications companies, the lessors of real property, financial institutions, equipment leasing companies, creditors, credit reporting agencies, and service providers, for money and property having an aggregate value estimated in excess of $20,000,000.00.

Indictment at 13-14, ¶ 2.

[18]The essential elements of conspiracy to commit wire and mail fraud are:

> *First*: That the defendant and at least one other person made an

- 22 -

fraud.[20]  The court therefore holds that count one states an offense against Simpson.

_____

> agreement to commit the crimes of wire fraud and mail fraud, as charged in the indictment;
>
> *Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and
>
> *Third*: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

Fifth Cir. Dist. Judges Ass'n Pattern Jury Instructions (Criminal Cases) 2.20 (2001) (adapted conspiracy charge for object crime of wire and mail fraud in single instruction).

[19]The essential elements of wire fraud are:

> *First*: That the defendant knowingly created a scheme to defraud . . .;
>
> *Second*: That the defendant acted with a[] specific intent to defraud;
>
> *Third*: That the defendant used interstate wire communications facilities for the purpose of carrying out the scheme; and
>
> *Fourth*: That the scheme to defraud employed false material representations.

*Id.* at 2.60.

[20]The essential elements of mail fraud are:

> *First*: That the defendant knowingly created a scheme to defraud . . .;
>
> *Second*: That the defendant acted with a specific intent to defraud;

V

*Alternative Motion to Strike Surplusage*

Simpson moves in the alternative to strike surplusage from the indictment.

A

Simpson maintains that the indictment contains evidentiary assertions and that their inclusion prevents him from challenging their admissibility as evidence at trial, thereby circumventing the rules of evidence and procedure and his right to a fair trial. He also contends that certain phrases and terms in the indictment are irrelevant, prejudicial, and/or immaterial to the offenses charged.[21]

---

> *Third*: That the defendant mailed something through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme; and
>
> *Fourth*: That the scheme to defraud employed false material representations.

*Id.* at 2.59.

[21]Simpson contends that the court can strike prejudicial allegations that are irrelevant or immaterial. The government responds that, to be stricken, surplusage must be irrelevant, immaterial, prejudicial, *and* inflammatory. The "courts have not applied a consistent test" to determine whether to strike allegations in an indictment as surplusage. *See* 1 Wright & Miller, *supra*, § 128, at 643-44. For example, in *United States v. Bullock*, 451 F.2d 884 (5th Cir. 1971), the panel held that to reverse a conviction based on the district court's refusal to strike, the court must be "convinced that the allegedly excessive language was irrelevant, inflammatory, and prejudicial." *Id.* at 888; *see also United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993) ("For language to be struck from an indictment, it must be irrelevant, inflammatory, and prejudicial." (citing *Bullock*, 451 F.2d at 888)). But in *United States v. Hughes*, 766 F.2d 875 (5th Cir. 1985), the panel held that the defendant might compel the deletion of surplusage if the indictment "assert[ed] irrelevant or immaterial facts, particularly those that might prejudice the jury." *Id.* at 879; *see also McDermot*, 58 F.3d 636, at *5

- 24 -

The government responds that the standard for striking surplusage is strictly construed against striking; that the court can strike surplusage only if it is clear that the allegations are immaterial, irrelevant, prejudicial, and inflammatory, and Simpson has failed to meet this burden; and that Simpson has failed to cite support for the assertion that the indictment cannot contain evidentiary allegations (particularly since the cases seem to prefer, although they do not require, an evidentiary indictment to advise the defendant of the charged offenses).

B

The court first addresses generally Simpson's argument that "evidentiary allegations" in the indictment are improper.  Although an indictment *need not* set forth the evidentiary details of the offenses charged, *see, e.g., United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991); *see also United States v. Williams*, 679 F.2d 504, 508 (5th Cir. 1982) (noting that Rule 7(c) "does not mean that the indictment must set forth facts and evidentiary details necessary to establish each of the elements of the charged offense."), there is no *prohibition* against pleading "evidentiary allegations," and Simpson has cited none.  The indictment is not evidence, and the government will be required to establish the admissibility of evidence at

(holding that purpose of Rule 7(d) is "to protect the defendant against prejudicial allegations of irrelevant or immaterial facts." (citation omitted)).  The court will apply the earlier standard set out in *Bullock*.  To the extent that *Bullock* and *Hughes* conflict, the court will follow *Bullock*.  "It is axiomatic in the Fifth Circuit that in the case of conflicting panel opinions, the earlier one controls, because one panel of the Fifth Circuit may not overrule another."  *MCI Telecomms. Corp. v. United Showcase, Inc.*, 847 F. Supp. 510, 512 (N.D. Tex. 1994) (Fitzwater, J.) (citing *In re Dyke*, 943 F.2d 1435, 1442 (5th Cir. 1991)).

trial, despite what the indictment alleges.  As the court explains in § V(C), the remedy for the complaints Simpson advances is found in Rule 7(d), which empowers the court to strike as surplusage any allegations that are irrelevant, inflammatory, and prejudicial.  The court will address in § V(D)(1)-(10) whether it should strike on this basis any allegations that Simpson challenges .  The court therefore denies Simpson's motion to dismiss to the extent he seeks this relief based on the inclusion of "evidentiary allegations" in the indictment.[22]

C

Simpson requests that the court strike specific allegations from the indictment.  Under Rule 7(d), the court can strike surplusage from an indictment on a defendant's motion.  *See* Rule 7(d); *see also* 1 Wright & Miller, *supra*, § 128, at 641.  The court can treat as surplusage "the allegation of additional facts beyond those which comprise the elements of the crime[.]" *Valencia*, 600 F.3d at 432.  But the mere presence of surplusage is not fatal to the validity of the indictment.  And although "Rule 7(c)(1) requires that the indictment contain the essential facts constituting the offense, that does *not* mean that all other language should be stricken from the indictment." *United States v. Alexander*, 2008 WL 2130185, at *3 (W.D. La. May 18, 2008).  "The purpose of [Rule] 7(d) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts." 1 Wright & Miller, *supra*, § 128 at 641.  "If, for example, the government asserts irrelevant or immaterial facts, particularly those that might prejudice the jury, the defendant may compel their deletion." *United States*

_____

[22]The court also denies Simpson's motion to dismiss count one or the entire indictment on the basis that the indictment is an "evidentiary indictment."

*v. Hughes*, 766 F.2d 875, 879 (5th Cir. 1985). "[P]rosecutors have been known to insert [unnecessary facts] for 'color' or 'background' hoping that these will stimulate the interest of the jurors." *United States v. Johnson*, 1999 WL 551332, at *1 (E.D. La. June 10, 1999). The court can strike as surplusage any irrelevant language that is unduly inflammatory and prejudicial in that it "serve[s] only to inflame the jury, confuse the issues, and blur the elements necessary for conviction[.]" *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). The court can also strike "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language[.]" *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953).

In sum, a motion to strike surplusage should be granted only if it is clear that the allegations are (1) irrelevant to the offenses charged, (2) prejudicial, and (3) inflammatory.[23] *See Bullock*, 451 F.2d at 888. But the court will not strike allegations that are *relevant*, no matter how prejudicial or inflammatory they may be to the defendant. In other words, allegations must be both irrelevant *and* prejudicial to be stricken. *See, e.g., United States v. Vogel*, 2010 WL 2465359, at *1 (E.D. Tex. May 21, 2010) ("[W]hen information in an indictment is relevant to the charged offense, it should not be stricken, regardless of how prejudicial it may be." (citations omitted)); *Alexander*, 2008 WL 2130185, at *2 ("[I]f the allegation is admissible and relevant to the charge, then regardless of how prejudicial, the court should not strike the language." (citation omitted)); Rule 7(d) Advisory Committee's

---

[23]*See* explanation of the court's use of this particular phrasing, *supra* note 21.

Note to 1944 enactment ("This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial."). And the "mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." *Alexander*, 2008 WL 2130185, at *2. Thus the court should first determine if the challenged allegations are relevant to the offenses charged. If a challenged allegation is irrelevant, only then will the court determine whether the allegation is prejudicial and inflammatory.

The decision to strike surplusage lies within the discretion of the district court, "which may reserve judgment on the motion until after the presentation of evidence at trial." 1 Wright & Miller, *supra*, § 128 at 641-42. And the standard by which the court should evaluate whether to strike surplusage is "exacting." *See Bullock*, 451 F.2d at 888. "[C]ourts are often slow to grant a motion to strike surplusage." 1 Wright & Miller, *supra*, § 128 at 647.

D

1

Simpson moves to strike several allegations on the ground that they are surplusage. He contends that they are at best evidentiary assertions, that including them in the indictment improperly forecloses him from challenging their admissibility as evidence at trial, excuses the government from the requirement that it defend their admissibility under Fed. R. Evid. 403 and 404 and against other objections, and precludes the court from exercising its authority to decide whether they are admissible in evidence, thereby depriving him and the

other defendants of a fair trial. He quotes Fifth Circuit authority for the premise that when the government asserts irrelevant or immaterial facts in the indictment, particularly those that might be prejudicial, a defendant can compel their deletion.[24]

The parts of the indictment that Simpson challenges on this basis are the following:

> Beginning in or about April 2004 and continuing through in or about April 2005, defendant Matthew Norman Simpson applied for and collected unemployment payments from the State of Texas by falsely claiming to be unemployed. During this same time, Simpson earned income directly and indirectly from SC TXLink, Symatec, and ETS.

Indictment at 17, ¶ 17 (bold font omitted).

> On or about November 11, 2005, defendant Matthew Norman Simpson mailed a letter to Experian, a credit reporting agency, falsely stating that he was not employed by Symatec or ADT, and that he was not associated with P.O. Box 2116, Red Oak, Texas.

*Id.* at 17, ¶ 18 (bold font omitted).

> In or about February 2007, defendant Matthew Norman Simpson submitted a claim on behalf of ColoExchange to Zurich North America (Zurich) claiming a power outage in June 2006 caused loss of revenue, loss of UDC as a client, and repair costs. In the claim, Simpson failed to disclose his association with UDC.

*Id.* at 20, ¶ 31 (bold font omitted).[25]

---

[24]*See* explanation for the standard the court applies for striking surplusage, *supra* note 21.

[25]Simpson quotes and cites count one, ¶¶ 36-38, but the court infers that this quotation and reference relates to the *second* superseding indictment. The corresponding allegation is found in count one of the third superseding indictment. *See* Indictment at 20-21, ¶¶ 31-33.

On or about March 12, 2007, defendant Matthew Norman Simpson emailed defendant Alicia Nicole Cargill Smallwood and directed her to fabricate documents.

> "I need you to put together an invoice 'from' Chris dated June 23, 2006, with the work done as 'database repair caused by power outage on 6/22.' Make it 6 hours at $500 per hour. I also need an invoice from May 2006 for Union Datacom showing at least $6,000 in charges. Put in a charge for bandwidth of $4,000 and make the rest voip."

Simpson then submitted the documents prepared by Smallwood as part of ColoExchange's claim to Zurich.

*Id.* at 20-21, ¶ 32 (bold font omitted).

Based on the fraudulent claim, Zurich issued a settlement check to defendant Matthew Norman Simpson doing business as ColoExchange for in excess of $31,000.

*Id.* at 21, ¶ 33 (bold font omitted).

The government responds that these alleged acts are relevant and material to the charges alleged in the indictment, and that it intends to present evidence at trial that these acts furthered the conspiracy charged in count one. The government contends that the indictment charges Simpson with conspiring with named and unnamed coconspirators to defraud victims and to obtain money and property from victims with no intention to pay for property received. It argues that Simpson made false representations to the unemployment agency, to a credit reporting agency, and to an insurance company, and that these acts demonstrate Simpson's practice of concealing his identity or association with a company and using coconspirators' companies as references. The government also maintains that Simpson made false statements to increase his credit rating so that he could obtain new contracts with

telecommunications companies and new leases to continue the fraud.

Each of the paragraphs that Simpson challenges alleges an overt act that the government contends is part of the conspiracy charged in count one. "The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *United States v. Archbold-Newball*, 554 F.2d 665, 684 (5th Cir. 1977) (citation omitted) (quoting *Carlson v. United States*, 187 F.2d 366, 370 (10th Cir. 1951)). Paragraphs 17 and 18 are alleged to be "Overt Acts related to SC TXLink." Indictment at 17. Paragraphs 31-33 are alleged to be "Overt Acts related to ColoExchange." *Id.* at 19-20.

The court holds that the allegation that Simpson applied for and collected unemployment payments from the State of Texas by falsely claiming to be employed is irrelevant to the offense charged. The government maintains that this allegation is relevant because it shows that Simpson made fraudulent representations and that the statements involved false information. But the government has not demonstrated how this overt act manifests that the conspiracy charged was at work: i.e., to fraudulently obtain property, such as computer and telecommunications equipment and infrastructure, and services without the intent to pay for them. Instead, the government contends that this allegation demonstrates Simpson's generally fraudulent behavior and his willingness to make false statements and to hide his true identity. Moreover, the court cannot discern from the indictment's other allegations regarding SC TXLink, or from the indictment as a whole, how this alleged overt

- 31 -

act is relevant to the conspiracy charged.

The court also finds that this overt act is prejudicial and inflammatory. It alleges that Simpson lied to obtain unemployment compensation from the State of Texas, and that Simpson was actually employed when he represented to the State of Texas that he was unemployed. The court therefore grants Simpson's motion to strike ¶ 17 of count one.

On the other hand, the allegation that Simpson created and submitted a false claim to an insurance company for a power outage *is* relevant to the offense charged and the general scheme alleged. The indictment alleges that Simpson submitted a claim on behalf of ColoExchange, one of his companies, to an insurance company claiming that, due to a power outage, the company lost a client, Union Datacom ("UDC"), a company allegedly owned by codefendant Michael Blaine Faulkner ("Faulkner"). In other words, the indictment charges that Simpson falsely obtained an insurance payment by representing to the insurance company that his company lost Faulkner's company as a client because of a power loss. This overt act, if proved, manifests that the alleged conspiracy was at work. For example, this overt act manifests that Simpson and his codefendants falsely asserted to at least one victim, and profited from the misrepresentation, that their companies were unrelated—i.e., that ColoExchange was unrelated to UDC—when both were involved in the same scheme. Moreover, the insurance company is listed as a victim in the government's Rule 12.4(a)(2) notice filed on February, 8, 2010. The court therefore denies Simpson's motion to strike ¶¶ 31-33 of count one.

The court concludes that Simpson has failed to demonstrate that the allegations of

fraud in ¶ 18 related to the credit reporting agency are irrelevant. The government argues that, by defrauding the credit reporting agency, Simpson aimed to increase his credit rating, thereby enabling him to further the general scheme alleged by obtaining contracts with telecommunciations companies and leases for property and equipment. This overt act, if proved, manifests that the alleged conspiracy was at work by demonstrating that Simpson falsely asserted that he was not employed by Symatec or ADT, entities allegedly involved in the conspiracy to commit mail and wire fraud, in order to increase his credit rating, which Simpson needed in order to enter into contracts and leases in furtherance of the conspiracy. The court denies Simpson's motion to strike ¶ 18.

2

Simpson moves to strike the following italicized language as surplusage, contending that it improperly expands the allegations in an imprecise and indefinite way: (1) that Simpson, among the conspirators, "[u]sed *various other* companies under their control to act as 'trade references' for the shell companies[,]" Indictment at 15, ¶ 8 (emphasis added); (2) that "defendant Alicia Nicole Cargill Smallwood and others mailed letters to *various* ETS customers requesting payment for services rendered[,]" *id.* at 17, ¶ 19 (bold font omitted; emphasis added); and (3) that defendants "[m]ade false representations in order to obtain property, *such as* computer and telecommunications equipment[,]" *id.* at 14, ¶ 3 (emphasis added). The government responds that the evidence it is entitled to introduce at trial is not limited to the overt acts alleged in the indictment; in other words, it posits that it need not specify in the indictment every overt act alleged against Simpson.

Simpson argues that the terms "various other," "various," and "such as" improperly expand the allegations of the indictment in an indefinite and generic way. He cites *United States v. Freeman*, 619 F.2d 1112 (5th Cir. 1980), in which the court rejected the defendants' argument that the indictment's reference to events that "included, but were not limited to" listed events vitiated the indictment. *Id.* at 1118. *Freeman* held that the district court "should have treated" the "included, but were not limited to" language as surplusage. *Id.* But the panel also noted that the defendants' need to know evidentiary details establishing the facts of the offense charged could be satisfied through a bill of particulars. *Id.* The *Freeman* panel affirmed the defendants' convictions. *Id.* at 1124.

A bill of particulars is the appropriate remedy, if any, for *vague or indefinite* language in an indictment. *See, e.g., United States v. Mayhew*, 337 F.Supp.2d 1048, 1061 (S.D. Ohio 2004) ("The purpose of a bill of particulars is to remedy vague or indefinite language in the indictment in order 'to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" (quoting *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004))); *see also United States v. Montalvo*, 820 F.2d 686, 691 (5th Cir. 1987) ("The purpose of a bill of particulars is to provide a defendant with more detail about the charges than is provided in the indictment."). But the purpose of *striking surplusage* in the indictment is "to protect the defendant against prejudicial allegations of irrelevant or immaterial facts." 1 Wright & Miller, *supra*, § 128, at 641.

Therefore, because Simpson complains that the terms "various others," "various," and

"such as" are *indefinite*, and he does not (and cannot in good faith) complain that they are *irrelevant*, the court denies Simpson's motion to strike these terms as surplusage. For example, if the court were to strike the term "various" from the allegation that "defendant Alicia Nicole Cargill Smallwood and others mailed letters to various ETS customers requesting payment for services rendered[,]" Indictment at 17, ¶ 19, the allegation would instead read: "defendant Alicia Nicole Cargill Smallwood and others mailed letters to ETS customers requesting payment for services rendered[.]" No purpose would be served by the court's deletion of the phrases of which Simpson complains; the allegation becomes no more definite by deletion of the term "various." Simpson's remedy, if any, lies in a bill of particulars.

### 3

Simpson moves to strike the term "among others" from the allegation that defendants "committed the following overt acts, *among others*[.]" Indictment at 15 (emphasis added). He maintains that the term "among others" imprecisely and indefinitely enlarges the accusations made against him and that such indefiniteness permits the government to constructively amend the indictment, and the jury to convict Simpson on a ground not charged by the grand jury.

"We have long followed the rule that the government is not *limited* to overt acts pleaded in the indictment in proving a conspiracy; it may show other acts of the conspirators occurring during the life of the conspiracy." *United States v. Elliott*, 571 F.2d 880, 911 (5th Cir. 1978) (emphasis added). And the government is not required to detail all of its proof in

the indictment; if it were, "the indictments in many cases would resemble books." *United States v. Climatemp, Inc.*, 482 F. Supp. 376, 392 (N.D. Ill. 1979) (refusing to strike the phrases "among other things" and "among others"), *aff'd sub nom. United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir. 1983). The government must prove that a conspirator committed "at least one of the overt acts alleged in the indictment . . . in furtherance of the conspiracy." *United States v. Brown*, 555 F.2d 407, 419 (5th Cir. 1977); *see also Walker v. United States*, 342 F.2d 22, 25 (5th Cir. 1965) (holding that it was necessary for conspiracy charge to prove the conspiracy between two or more alleged coconspirators "and the commission of at least one of the overt acts alleged in the indictment"); *see* Fifth Cir. Dist. Judges Ass'n Pattern Jury Instructions (Criminal Cases) 2.20 (2001) (specifying that it is essential element of conspiracy to commit an offense against the laws of the United States that "one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts *described in the indictment*, in order to accomplish some object or purpose of the conspiracy." (emphasis added)).[26]

Simpson has not established that the phrase "among others" is irrelevant, inflammatory, and prejudicial. "The prosecution will, of course, be entitled to offer proof of any of the . . . overt acts alleged, and . . . others may be shown, but only as *corroborative of those charged*, but the defendants could not be convicted, unless the prosecution

---

[26]There are conspiracy offenses that do not require proof of the commission of an overt act. *E.g.*, 21 U.S.C. § 846; *see also Whitfield v. United States*, 543 U.S. 209, 212 (2005) (noting that the drug conspiracy statute, 21 U.S.C. § 846, does not require proof of an overt act). The conspiracy offense charged in this case, however, does require such proof.

successfully established at least one of the acts alleged." *United States v. Hosier*, 50 F.2d 971, 971-72 (W.D. La. 1931) (emphasis added). Therefore, although the government may offer proof at trial of overt acts not alleged in the indictment, in order to prove Simpson guilty of conspiracy to commit wire and mail fraud, it must prove that Simpson or one of his alleged coconspirators committed at least one of the overt acts alleged in the indictment. To ensure that the jury only convicts Simpson based on an overt act charged in the indictment, the court will instruct the jury that the government must prove that one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the overt acts *described in the indictment*, in order to accomplish some object or purpose of the conspiracy. Because such an instruction adequately addresses any potential prejudice, the court denies Simpson's motion in this respect.

## 4

Simpson moves to strike the following language as surplusage, contending that it is expansive, undefined, open-ended, unrestricted, and indefinite because it refers to "others" and uses similar terminology to expand the indictment to include any number of unnamed participants: (1) the phrase "and others," Indictment at 17, ¶ 19; *id.* at 24, ¶ 46; (2) the phrase "other conspirators,"[27] *id.* at 37, ¶ 100; *id.* at 45, ¶ 126; and (3) all indefinite references to "persons [or a person or another person] known to the Grand Jury." *See* D. Mot. 8-9 (citing the parts of the Indictment that he challenges on this ground). Simpson maintains that the

---

[27]Simpson challenges the phrase "other conspirators," but the paragraphs he cites state "other coconspirators." *See* Indictment at 37, ¶ 100; *id.* at 45, ¶ 126.

use of such language violates the rules of pleading, deprives him of notice, and permits the indictment to be constructively amended, in derogation of his rights under the Fifth Amendment and of his Sixth Amendment right to trial by jury.

The government responds that the practice of naming in an indictment individuals who are unindicted coconspirators has been severely criticized by the Fifth Circuit. It argues that an indictment is sufficient if it alleges that the defendant conspired with another person or persons known, and that the identity of the unnamed persons may be provided through trial evidence, through an informal request to the government, or through a bill of particulars.

"An unindicted conspirator anonymously designated as an 'other person' or as 'John Doe' may be unmasked in a bill of particulars or at trial." *United States v. Briggs*, 514 F.2d 794, 805 (5th Cir. 1975). In *Briggs* the court held that naming unindicted coconspirators in an indictment would "officially charg[e] them with crimes while denying them a forum to vindicate their names," which would "circumvent the adversary process which is at the heart of our criminal justice system[.]" *Id.* at 806. Simpson has not established that references to unindicted coconspirators and other persons are surplusage that should be stricken from the indictment. The court therefore denies this ground of Simpson's motion.

5

Simpson moves to strike the allegation that the "property subject to forfeiture includes, but is not limited to" a list of items of property, Indictment at 64, contending that it should be stricken as surplusage. The government responds that Simpson misunderstands the purpose of the forfeiture notice in the indictment. It posits that the purpose is to inform

Simpson of the government's intent to seek forfeiture of any property, constituting proceeds of the offense, used to facilitate the offense or involved in the offense, and any traceable property that includes, but is not limited to, the property itemized in the indictment.

Under Rule 32.2(a), the court cannot enter a judgment of forfeiture unless the indictment notifies the defendant that the government is seeking forfeiture as a remedy. The indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Rule 32.2(a). The purpose of the forfeiture notice is to inform the defendant that the government seeks forfeiture as a remedy. *See United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001). The court can, however, direct that the government file a bill of particulars identifying the specific items of property that it asserts are subject to forfeiture. *See, e.g, United States v. Vasquez-Ruiz*, 136 F.Supp.2d 941, 944 (N.D. Ill. 2001). The government has already filed one such bill of particulars that identifies specific property belonging to Simpson of which the government seeks forfeiture. *See United States v. Simpson*, 2011 WL 195676, at *1 (N.D. Tex. Jan. 20, 2011) (Fitzwater, C.J.). Because Rule 32.2(a) does not require that the indictment identify the specific property that the government seeks to forfeit, the court denies Simpson's motion in this respect.

6

Simpson moves to strike as surplusage the entire introduction to the indictment, contending it is surplusage because it is simply a narrative or makes assertions about the law that are not elements of the offense. The government responds that the introduction provides guidance to the defendants and to the jury and will assist the jury and the court in

understanding the allegations and the evidence presented at trial.

The introduction is not irrelevant to the offenses charged. It provides background information on the defendants and entities allegedly involved in the conspiracy, and it may assist the jury in understanding the nature of the charge of conspiracy to commit wire and mail fraud. *See, e.g, United States v. Oliver*, 2008 WL 2511751, at *3 (N.D. Tex. June 23, 2008) (Fitzwater, C.J.) (denying motion to strike surplusage addressed to portion of indictment describing background of Texas Workforce Commission and how unemployment insurance benefits are paid to claimants), *aff'd on other grounds*, 630 F.3d 397 (5th Cir. 2011). And Simpson has not demonstrated that the allegations he challenges are irrelevant, inflammatory, and prejudicial. He simply asserts that the entire introduction is surplusage and should be stricken because it is a narrative or it makes assertions about the law that are not elements of the offense. Because the standard for striking surplusage requires a showing that the surplusage is irrelevant, inflammatory, and prejudicial, the court denies Simpson's motion in this respect.

7

In conjunction with his request to strike the introduction, Simpson moves to strike as surplusage the definitions in count two, *see* Indictment at 52, ¶¶ 2-5, and footnotes 1-4,[28] *see* Indictment at 3, 35, and 37. The definitions of count two relate to the offense alleged in that count: fraud and related activity in connection with electronic mail and aiding and abetting.

_____

[28]Simpson refers twice to footnote 3, *see* D. Mot. 11, ¶ 17, but it is apparent he is challenging footnote 4 as well.

The challenged paragraphs define SPAM, commercial SPAM, autodialer, robodialer, fax blasting, and broadcast faxing. Likewise, notes 1-4 define terms relevant to count one: conspiracy to commit wire and mail fraud. They define short message service, direct inward dialing, digital subscriber line, and termination service. These definitions and descriptions are relevant to the offenses charged. As with his challenge to the introduction of the indictment, Simpson has not demonstrated that the allegations he challenges are irrelevant, inflammatory, and prejudicial. The court therefore denies Simpson's motion in this respect.

8

Simpson moves to strike as surplusage the assertion that "[t]he switches and the networks constituted protected computers pursuant to 18 U.S.C. § 1030(e)(2)," Indictment at 2, ¶ 5, contending that this assertion is not relevant to any charge in the indictment because the government has abandoned the charge made in earlier indictments that Simpson and other defendants violated §1030. The government does not respond to Simpson's motion in this respect.

Simpson is charged in count two with fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2). 18 U.S.C. § 1037(a)(2) makes it a violation to knowingly use a *protected computer* to relay or transmit multiple commercial electronic mail messages with the intent to deceive or mislead recipients as to the origin of the messages. 18 U.S.C. § 1037(d)(4) provides that terms not defined in § 1037 are defined by the CAN-SPAM Act of 2003, 15 U.S.C. § 7702(13). 15 U.S.C. § 7702(13) directs that "'protected computer' has the meaning given that term in [18 U.S.C. § 1030(e)(2)(B)]." The

allegation that switches and networks constituted a protected computer under 18 U.S.C. § 1030(e)(2) is therefore relevant to the offense charged in count two, because the indictment is charging that the switches and networks in question constituted a protected computer under 18 U.S.C. § 1030(e)(2). Simpson's motion is therefore denied in this respect.

9

Simpson moves under the same rubric as the preceding challenge to strike ¶¶ 1-12 of the introduction. He maintains that these paragraphs and the footnotes define terms that are purportedly relevant to the telecommunications industry, and that ¶¶13-44 describe Federal Communication Commission ("FCC") rules, describe defendants and related entities, and list addresses associated with various defendants. Simpson argues that these paragraphs are surplusage because they do not describe an element of the offense.

The government responds that Simpson's motion does not meet the exacting standard to strike surplusage. It maintains that it will use and prove at trial the definitions, concepts, and addresses mentioned in the introduction of the indictment. And the government posits that providing definitions of terms and concepts should assist the jury and the court in understanding the allegations and evidence presented during trial, and that the introduction of the indictment does not broaden the allegations or mislead the defendants.

These parts of the indictment are relevant to an offense charged in the indictment. Paragraphs 1-12 of the introduction define telecommunications, incumbent local exchange carrier, competitive local exchange carrier, digital switches, voice over internet, letter of authority and customer facility assignment, bandwidth, instant messaging, colocation

provider, remailer, and domain name, and in general describe how calls are originated and transferred. Paragraph 13 alleges that the FCC adopted rules that require telecommunications companies to pay a percentage of revenues for interstate and international services. Paragraphs 14-37 describe the various entities allegedly used by the defendants in the course of the conspiracy, the acts of these companies, the defendants involved with these companies, and the dates during which the conspiracy involved these companies. Paragraphs 38-44 list addresses associated with the defendants.

Because Simpson has failed to show that the paragraphs he challenges are irrelevant, the court denies this ground of his motion.

10

Finally, Simpson moves to strike as surplusage an allegation in count one that Simpson and codefendant Casimir A. Wojciechowski "allowed other persons known and unknown to the Grand Jury to use these telephone numbers to make numerous calls in violation of telemarketing rules, including calling individuals on the 'do not call list' and calling cellular telephones instead of land lines." Indictment at 21, ¶ 35. Simpson argues that the statement regarding "telemarketing rules" is surplusage and indefinite, that the "including" language improperly broadens the allegation to include any telemarketing transgression, and that this allegation improperly circumvents the rules governing the admissibility of evidence. He also posits that this surplusage is objectionable because it is inflammatory, may confuse the issues or blur the elements, is merely evidentiary, and is included to avoid a challenge to its admissibility, or improperly enables the prosecution to

constructively amend the indictment. The government does not respond specifically to Simpson's motion in this respect.

The court denies Simpson's motion to strike in this respect. Even assuming *arguendo* that this language can be interpreted to charge the commission of a crime other than the conspiracy alleged in count one, the court can adequately address this concern by instructing the jury that a violation of telemarketing rules and regulations is not in itself a criminal offense. *See, e.g., United States v. Downs*, No. 3:06-CR-00034-D, jury instruction at 7 (N.D. Tex. June 20, 2007) (Fitzwater, J.) (instructing jury that it had "heard evidence that the defendant may have violated Federal Aviation Administration regulations. A violation of a Federal Aviation Administration regulation is not in itself a criminal offense."), *aff'd*, 299 Fed. Appx. 310 (5th Cir. 2008). Simpson is also protected against the introduction of inadmissible evidence by the Federal Rules of Evidence, regardless of the allegations in the indictment.[29] The court therefore denies this ground of Simpson's motion.

## VI

### *Motion to Dismiss Count Two*

Simpson moves to dismiss count two of the indictment, which charges him with violating 18 U.S.C. § 1037(a)(2) and (b)(2)(C).[30] He maintains that 18 U.S.C. § 1037 is

---

[29]*See* discussion *supra* § V(B).

[30] 18 U.S.C. § 1037:

> (a) In general. — Whoever, in or affecting interstate or foreign commerce, knowingly —

unconstitutionally vague, overly broad as applied in this case, and unconstitutional under the First Amendment. He further argues that count two fails to provide fair notice of the crime charged.

A

Count two[31] charges that Simpson and certain codefendants provided SPAMers with

---

       \*     \*     \*

(2) uses a protected computer to relay or retransmit multiple commercial electronic mail messages, with the intent to deceive or mislead recipients, or any Internet access service, as to the origin of such messages,

       \*     \*     \*

(5) []shall be punished as provided in subsection (b).

(b) Penalties. — The punishment for an offense under subsection (a) is —

       \*     \*     \*

(2) a fine under this title, imprisonment for not more than 3 years, or both, if —

(C) the volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, or 250,000 during any 1-year period[.]

[31]Count two alleges, in relevant part:

[Simpson] did aid and abet [the codefendants] and other persons known and unknown to the Grand Jury in knowingly using a protected computer to relay and retransmit multiple commercial electronic mail messages, with the intent to deceive and mislead recipients, and any Internet access service, as to the origin of

equipment, bandwidth, corporate infrastructure, IP addresses, and domain names. Simpson challenges this count on three grounds: first, it fails to provide notice and fails to state an offense; second, § 1037(a)(2) and (b)(2) is vague on its face and unconstitutionally overbroad because it chills protected anonymous speech; and third, § 1037(a)(2) and (b)(2)(C) is unconstitutionally vague as applied to Simpson.

B

1

Simpson contends that count two fails to provide adequate notice and fails to state an offense. He maintains that, although some courts have concluded that it is generally sufficient for an indictment to set forth the offense in the words of the statute, the general rule is only permissible when the words themselves fully, directly, and expressly, and without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. He posits that it is generally sufficient for an indictment to set forth the offense in the words of the statute itself, provided the elements of the offense are delineated and the general statement is accompanied by the specific facts constituting the offense. Simpson contends that count two is fundamentally defective because it fails to provide adequate notice of the facts constituting the offense—the alleged relaying and

---

> such messages; and the volume of the electronic mail messages transmitted in furtherance of the offenses exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period, and 250,000 during any 1-year period.

Indictment at 53, ¶ 6.

retransmission of commercial email messages with intent to mislead recipients as to the origin of the message—which prevents him from preparing a defense. He posits that count two does not inform him of any victims and does not state what is alleged to have been deceptive or misleading about the origin, or what the origin was, and that, without knowing which company or companies allegedly sent the emails, what was allegedly deceptive or misleading regarding the origin of such messages, or the identity of the purported victims, he cannot prepare a defense. Simpson also complains that count two lacks a definitive time frame in which he allegedly participated in the crime, relying instead on a conclusory assertion that "in or about March 2003 and continuing through or about July 2009" he allegedly participated with other defendants in committing the offense, which is not definitive enough to allow him to identify what conduct may have constituted the crime. He argues that six years is a significant period, that may involve numerous companies with different technologies and resources, and that, without knowing more specifics regarding time frames and at least which company or companies were allegedly involved, or which computers, and at what locations, and what the allegedly deceptive emails' origins were, it is impossible to prepare a defense or assert his constitutional right to bar further prosecution on grounds of double jeopardy.

The government responds that count two satisfies the constitutional requirement that the indictment set forth the elements of the offense with enough clarity to notify Simpson of the crime charged and allow him to defend against double jeopardy. It contends that count two provides adequate notice of the crime charged because it follows the language of

§ 1037(a)(2) and (b)(2), sets forth the elements of the offense, and provides sufficient details to identify the allegedly criminal acts.

2

As explained in § II, an indictment adequately charges an offense if it (1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions.  The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.  Thus so long as an indictment adequately apprises the defendant of the charge against him and is specific enough to prevent double jeopardy, it will not be dismissed unless it fails to contain the essential elements of the offense charged.  Generally, an indictment which follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime charged.

Count two tracks the language of the statute: it alleges that Simpson and other defendants, in and affecting commerce, aided and abetted by each other and other persons known and unknown to the grand jury, knowingly used a protected computer to retransmit multiple commercial email messages with the intent to deceive and mislead recipients, and any Internet access service, as to the origin of such messages, and that the volume of these messages exceeded the volume specified in § 1037(b)(2)(C).  Paragraph 6 of count two sets forth the elements of the offense charged and sufficiently apprises Simpson of the charge against him. *See Thomas*, 348 F.3d at 82.  Even assuming *arguendo* that the indictment was

required to contain specific factual information in addition to tracking the language of the statute, ¶ 8(a)-(m) provides sufficient details. *See* Indictment at 54-56. The court therefore holds that count two conforms to minimum constitutional standards, and it denies Simpson's motion on the first ground.

C

Simpson also argues that 18 U.S.C. § 1037(a)(2) and (b)(2) is vague on its face and unconstitutionally overbroad because the statute chills protected anonymous speech.

1

Simpson contends that a criminal offense must be defined with sufficient precision that ordinary people can understand what conduct is prohibited; that there is a First Amendment right to advertise, provided the advertisements are not false, deceptive, or misleading; and that the First Amendment protects anonymous speech, and anonymous commercial speech has been protected. He cites the Supreme Court of Virginia's decision in *Jaynes v. Commonwealth of Virginia*, 666 S.E.2d 303 (Va. 2008), *cert. denied, Virginia v. Jaynes*, ___ U.S. ___, 129 S.Ct. 1670 (2009), which held that a state statute similar to 18 U.S.C. § 1037(a)(2) and (b)(2)(C) violated the First Amendment because it restricted anonymous speech and was overly broad. Simpson contends that the legislative history of the Controlling the Assault of Non-Solicited Pornography and Marketings Act of 2003 (the "CAN-SPAM Act") evinces a primary purpose to prevent dissemination and unwanted receipt of offensive pornographic material; sending so-called SPAM without disclosure of the origin of the message, which is the essence of the charge in count two, is an exercise that

will likely invite arbitrary and discriminatory application; commercial transmitters do not invariably identify their source, but instead often identify a source many times removed from the originating source, and this happens in commerce from hundreds to millions of times daily; the government should not be the one to choose who can use advertising techniques referred to as SPAM and those who cannot; and, barring exceptional circumstance, service providers cannot be held responsible for how their customers use the service or the content of the communications they send. Simpson also maintains that the government appears to have conceded that count two relates to SPAM sent by defendants' customers, thus establishing another reason why the statute is unconstitutionally vague since all commercial servers are probably not held to this standard. He argues that 18 U.S.C. § 1037(a)(2) and (b)(2)(C) is overly broad and chills protected speech because it attempts to regulate the dissemination of commercially protected anonymous free speech and, if a business cannot advertise in bulk by regular mail or email, it must subcontract for this service, it may not want the subcontractor's name, email address, or any other identifying features in its advertisement or email, the subcontractor would use the business' email address or other information provided by the business in the emails, and the statute would allow the government to conclude arbitrarily that a subcontractor had intentionally violated § 1037(a)(2). Simpson asserts that the arbitrary enforcement of the statute would lead to the suppression of advertising, reducing the information available for consumer decisions and thereby defeating the purpose of the First Amendment.

The government responds that the statute is not overbroad because it concerns only

commercial speech, to which the overbreadth doctrine does not apply. It maintains that

Simpson cannot complain of vagueness because his alleged conduct falls clearly within the

statute's proscriptions. The government also contends that the statute is not impermissibly

vague because it requires the government to prove specific intent to deceive recipients or an

access service as to the messages' origin, common definitions apply to the terms "deceive,"

"mislead," and "origin," and the types of conduct proscribed are clear based on these

definitions.

2

On a facial challenge[32] for vagueness, the court first must "determine whether the

enactment reaches a substantial amount of constitutionally protected conduct." *United States*

*v. Clark,* 582 F.3d 607, 612 (5th Cir. 2009) (quoting *Vill. of Hoffman Estates v. Flipside,*

*Hoffman Estates, Inc.,* 455 U.S. 489, 494-95 (1982)). "The court should then examine the

facial vagueness challenge and, assuming the enactment implicates no constitutionally

protected conduct, should uphold the challenge only if the enactment is impermissibly vague

in all of its applications," including its application to the instant party. *Id.* at 612.

"Although ordinarily '[a] plaintiff who engages in some conduct that is clearly

proscribed cannot complain of the vagueness of the law as applied to the conduct of others,'"

plaintiffs may make a facial challenge to a statute in the First Amendment context by arguing

---

[32]"A 'facial' challenge, in this context, means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.'" *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n.5 (1982) (quoting *Steffel v. Thompson*, 415 U.S. 452, 474 (1974)).

that "a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *United States v. Williams,* 553 U.S. 285, 304 (2008) (quoting *Vill. of Hoffman Estates,* 455 U.S. at 494).

> The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.

*Virginia v. Hicks,* 539 U.S. 113, 118-19 (2003) (internal quotation marks and citations omitted). But because the "overbreadth doctrine is 'strong medicine'" the Supreme Court "ha[s] employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber,* 458 U.S. 747, 769 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973)). Accordingly, overbreadth analysis generally does not apply "where the parties fail to describe the instances of arguable overbreadth of the contested law." *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 450 n.6 (2008).

Simpson contends that §§ 1037(a)(2) and (b)(2)(C) impermissibly limit the free speech rights of any person or entity sending messages *en masse* without identifying the sender, including corporations that send mass marketing or advertising emails. By its terms, the statute applies to the transmission of "multiple commercial electronic mail messages." 18 U.S.C. § 1037(a)(2). But "the overbreadth doctrine does not apply to commercial speech." *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 619 n.12 (1998) (quoting *Vill. of Hoffman Estates,* 455 U.S. at 497). Simpson thus cannot rely on the potential

application of these sections to commercial speech as an "instance[] of arguable overbreadth," and the court will not undertake overbreadth analysis where he has not supplied such examples. *See Wash. State Grange*, 552 U.S. at 450 n.6; *see also United States v. Twombly,* 475 F.Supp.2d 1019, 1024 (S.D. Cal. 2007) (denying motion to dismiss indictment under § 1037 for overbreadth).

The court similarly rejects Simpson's reliance on *Jaynes*. In *Jaynes* the Supreme Court of Virginia invalidated a provision of Virginia law as unconstitutionally overbroad because it "prohibit[ed] the anonymous transmission of all unsolicited bulk e-mails including those containing political, religious or other speech protected by the First Amendment to the United States Constitution." *Jaynes,* 666 S.E.2d at 314. The court held that the statute burdened core political speech and did not satisfy strict scrutiny because it was not narrowly tailored to advance the Commonwealth's stated interest in controlling the transmission of unsolicited commercial, fraudulent, or otherwise illegal bulk email. *Id.* at 313. Simpson argues that this rationale from *Jaynes* applies to § 1037(a)(2) and (b)(2)(C) because these provisions also regulate anonymous speech and do not satisfy strict scrutiny. But Simpson does not argue that these provisions regulate the anonymous and unsolicited transmission of bulk emails outside commercial, fraudulent, or illegal contexts. And the court will not undertake overbreadth analysis where Simpson has not supplied arguable instances of substantial overbreadth. *See Wash. State Grange*, 552 U.S. at 450 n.6.

Simpson also relies on the legislative history of the CAN-SPAM Act to support his overbreadth argument, contending it evinces a primary purpose of preventing the

dissemination and unwanted receipt of offensive pornographic material. He maintains that the statute is overbroad because it also regulates other types of anonymous and unsolicited bulk email transmissions. Although "legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity . . . [i]n the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." *Love Terminal Partners, L.P. v. City of Dall., Tex.,* 527 F.Supp.2d 538, 558 n.14 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Burlington N. R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 461 (1987)). Here, the language of § 1037 (a)(2) and (b)(2)(C) is conclusive, and the court need not consult legislative history.

The court therefore rejects Simpson's challenge to 18 U.S.C. § 1037(a)(2) and (b)(2) based on facial vagueness and unconstitutional overbreadth.

## D

Simpson also contends that § 1037(a)(2) and (b)(2)(C) is unconstitutionally vague as applied to him.

### 1

Simpson contends in the alternative that, if the court rejects his first challenge to § 1037, it should hold that the statute is unconstitutionally vague as applied to him. He reasons that, assuming he was knowingly involved in transmitting commercial emails in great volume, the statute is unconstitutionally vague as applied because it provides inadequate notice of the proscribed conduct, punishes behavior that someone could not have known was illegal, and encourages subjective enforcement of laws based on arbitrary and discriminatory

enforcement by government officers. Simpson maintains that he could not have known from the statute the circumstances that would cause sending multiple emails to be unlawful, because the Internet is diverse in terms of origin identification, and because multiple emailings may have multiple sources, or origins; "origin" is a broad term, defying easy definition; and there is no clear notice as to the type of conduct that might mislead or deceive someone about the origin of the emailings. He also contends that because the intent element of deceiving or misleading about the emails' origin is vague, and count two as applied to him does not provide content to these elements of the offense, it is vague in its application.

The government responds that the statute is not vague as applied because the government must prove at trial that Simpson had a specific intent to deceive or mislead recipients as to the origin of the emailings, and because common definitions apply to the terms Simpson challenges; the terms "deceive" and "mislead" are not vague because their common definitions evince an intentional misrepresentation or false impression concerning the sender's identity; the term "origin" is not vague because it refers to a source of SPAM messages that includes information about the sender's identity, which senders often attempt to conceal; and that because common definitions apply to the statute's terms, and because Simpson's alleged conduct falls within the common definitions of these terms, the statute is not vague as applied.

2

"Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their

conduct is at risk." *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975) (citation omitted). "[T]o be unconstitutionally vague, a statute must be 'impermissibly vague in all its applications,' including its application to the party bringing the vagueness challenge." *Clark,* 582 F.3d at 612-13 (quoting *Vill. of Hoffman Estates,* 455 U.S. at 495, and citing *Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 546-47, 551 n.19 (5th Cir. 2008)). To determine whether a statute is vague in all applications, "a reviewing court should examine the complainant's conduct *before* analyzing other hypothetical applications of the law because a [party] who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Roark & Hardee,* 522 F.3d at 546 (internal quotation marks and citations omitted). A law is vague in all its applications when "men of common intelligence must necessarily guess at its meaning." *Clark,* 582 F.3d at 613 (internal quotation marks and citations omitted).

The court therefore begins by reviewing Simpson's alleged conduct. *Clark,* 582 F.3d at 612. Simpson argues that the statutory term "origin" is vague because multiple emailings may have multiple sources or origins, and he could not discern what type of conduct would mislead others as to the origin of an email. But count two alleges that Simpson provided his codefendants with IP addresses from which to send mass emails, and that by sending these emails from the IP addresses that Simpson provided, he and his codefendants sought to obscure the fact that the messages were being sent by their sham corporations. *See*

Indictment at 52-56, ¶¶ 6, 8(b), (c), (h). If these allegations are proved, they establish at least one course of conduct that would violate § 1037's proscription of using a protected computer to send multiple commercial electronic mail messages "with the intent to deceive or mislead recipients, or any Internet access service, as to the origin of such messages[.]" Because Simpson's alleged conduct is clearly proscribed by the statute, it is not vague as applied to him or impermissibly vague in all of its applications.

The court therefore concludes that Simpson has failed to show that § 1037(a)(2) and (b)(2)(C) is unconstitutionally vague as applied to him.

## VII

### *Motion to Dismiss Count Four*

Simpson moves to dismiss count four of the indictment, which charges him with the offense of obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(c)(1).[33]

---

[33]18 U.S.C. § 1512(c)(1):

> (c) Whoever corruptly—
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; . . . shall be fined under this title or imprisoned not more than 20 years, or both.

## A

The indictment charges:

> On or about March 13, 2009, . . . [Simpson] did knowingly and corruptly destroy and attempt to destroy records and documents, namely email and other electronic data by deleting the data from his computer and other data storage devices, with the intent to impair its integrity and availability for use *in an official proceeding*, that being the criminal investigation by the Federal Bureau of Investigation.

Indictment at 58 (emphasis added). Simpson contends that count four does not sufficiently allege the essential elements of the crime charged because the Federal Bureau of Investigation's ("FBI's") criminal investigation is not an "official proceeding" within the meaning of the statute. He argues that although an FBI investigation may culminate in an "official proceeding," the investigation itself is not an "official proceeding." The government responds that the FBI investigation of Simpson was an "official proceeding" within the terms of the statute. It maintains that Simpson satisfies the statute's intent requirement because he was aware of the pending FBI investigation and had been specifically asked to preserve evidence at the time he concealed or destroyed digital records relating to UDC.

## B

### 1

Simpson relies primarily on *Ramos*, 537 F.3d 439. In *Ramos* the panel held that the Border Patrol's internal investigation into an employee's compliance with the agency's established firearms policies was not an "official proceeding" within the meaning of

§ 1512(c). *Id.* at 461. The panel reasoned that the investigation was not an "official proceeding" because it was "an internal, informal investigation, in its most preliminary stages, of employee violations of an agency policy." *Id.* at 463. The panel explained in reaching this conclusion that, "in all the instances in which the term 'official proceeding' is actually used in § 1512, its sense is that of a hearing rather than simply any investigatory step taken by an agency." *Id.* Alternatively, the panel held that the rule of lenity compelled the conclusion that the agency investigation at issue was not an "official proceeding" because "official proceeding" was an ambiguous term in a criminal statute. *Id.* at 464. The panel expressly declined to address whether an agency investigation can never constitute an "official proceeding," holding only that the investigation at issue did not qualify. *Id.* at 464 n.18.

The government relies on *United States v. Hutcherson,* 2006 WL 1875955 (W.D. Va. July 5, 2006), which held that "government agency actions, such as the FBI investigation of the defendant, are 'official proceedings' under § 1512[.]" *Id.* at *2. The *Hutcherson* court reasoned that the term "official proceedings" has an "expansive nature" because § 1503, another obstruction of justice provision, expressly applies only to interference with judicial proceedings, and the term has other applications as defined for purposes of § 1512. *Id.* *Hutcherson* relied on two cases, both decided before the 2002 amendments to § 1512, holding that agency investigations are "official proceedings." *Id.; see also United States v. Kelley,* 36 F.3d 1118, 1128 (D.C. Cir. 1994) (holding that grand jury proceeding and USAID Inspector General investigation, charged in the indictment, were "official proceedings");

*United States v. Gonzalez,* 922 F.2d 1044, 1055-56 (2d Cir. 1991) (holding that DEA investigation was an official "proceeding" by "read[ing] the term 'official proceeding' broadly in order to effect Congress' purpose in passing it[.]").

The court is not persuaded by the government's reliance on *Hutcherson* because the Fifth Circuit in *Ramos* considered both *Gonzalez* and *Kelley* inapposite. *See Ramos,* 537 F.3d at 463 n.17. *Gonzalez,* the *Ramos* panel explained, interpreted the term "official proceeding" as part of a venue provision in the pre-amendment statute defining where a prosecution could be brought, and determined that the venue provision should not limit the substantive criminal section at issue, which contained no mention of an "official proceeding." *Id.* And the *Ramos* panel considered *Kelley* to support its conclusion because *Kelley*'s determination that the Inspector General investigation was an "official proceeding" turned on the Inspector General's authority to "issue subpoenas and administer oaths." *Id.* Unlike the Inspector General, the Border Patrol in *Ramos* was not authorized to issue subpoenas or administer oaths, and its investigation amounted to a "mere police investigation." *Id.*

2

Section 1515(a)(1) defines "official proceeding" for purposes of § 1512.[34] This

_____

[34]18 U.S.C. § 1515(a)(1) defines "official proceeding" for purposes of § 1512 as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B) a proceeding before the Congress;

definition section does not expressly include or exclude the FBI investigation in this case. Certainly, an FBI investigation may lead to an "official proceeding" within the scope of §§ 1512 and 1515, even if the investigation itself is not an "official proceeding." *See, e.g., United States v. Frankhauser,* 80 F.3d 641, 652 (1st Cir. 1996) (considering evidence defendant knew of FBI investigation to indicate that he expected federal grand jury investigation or trial to begin soon). And in Simpson's case, it may be true that the FBI investigation led to the grand jury investigation and the instant indictment. But Simpson contends that the FBI investigation that is the subject of count four is not an "official proceeding" of any type defined by § 1515. He maintains that the indictment is insufficient unless it alleges one. The *Ramos* panel considered that the term "official proceeding" in § 1512 was "at the very least an ambiguous term in a criminal statute." *Ramos*, 537 F.3d at 463. Other courts have noted that "there is limited law addressing this issue" and that courts vary in their interpretations of the term. *United States v. Holloway,* 2009 WL 4048748, at *5 (E.D. Cal. Nov. 20, 2009).

Several courts have held that government investigations like the FBI investigation at

---

(C) a proceeding before a Federal Government agency which is authorized by law; or
(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

issue are not "official proceedings" as defined in § 1515 for purposes of § 1512.[35] *See United States v. Gabriel,* 125 F.3d 89, 105 n.13 (2d Cir. 1997) (explaining that FBI investigation, standing alone, is not an "official proceeding": "[T]he jury also reasonably could have concluded that Gabriel's sole intent was to interfere with the FBI investigation, and if the jury had so concluded, it would have been compelled to find Gabriel innocent."), *overruled on other grounds by Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005); *United States v. Ho,* 651 F.Supp.2d 1191, 1197 n.3 (D. Haw. 2009) (describing as "unextraordinary" the "proposition that to violate § 1512(b)(1), the defendant must have foreseen an 'official proceeding' and not a mere investigation"); *United States v. Peterson*, 627 F.Supp.2d 1359, 1369 (M.D. Ga. 2008) ("A federal law enforcement agency investigation is not an official proceeding."); *United States v. Dunn*, 434 F.Supp.2d 1203, 1207, 1209 (M.D. Ala. 2006) (holding ATF investigation was not "proceeding before a Federal Government agency," which typically "refers to hearings, or something procedurally similar, held before federal agencies." (citing *Black's Law Dictionary* 1221 (7th Ed. 1999)); *Hobley v. Burge,* 2004 WL 2658075, at *10-11, *11 n.13 (N.D. Ill. Oct. 13, 2004) (holding that alleged interference with FBI investigation was "not sufficient to satisfy the official proceeding requirement" of § 1512) (citing *Gabriel*, 125 F.3d at 105 n.13); *see also United States v. Shotts*, 145 F.3d 1289, 1302 (11th Cir. 1998) (finding "official proceeding" requirement satisfied by

---

[35]The only definition in § 1515(a)(1) that is applicable to this case is "a proceeding before a Federal Government agency which is authorized by law." The government does not contend that the FBI investigation qualifies under another category of "official proceeding," and the other categories are unrelated to investigations by government agencies.

indictment alleging interference with federal grand jury investigation *as well as* FBI investigation).

Other courts, like *Hutcherson*, have held that government investigations can be considered "official proceedings" for purposes of § 1512. *See Holloway,* 2009 WL 4048748, at *6 (holding that "an FBI investigation which led to federal charges satisfies the 'official proceeding' requirement.") (citing *United States v. Cross,* 258 F.Supp.2d 432, 435 (E.D. Va. 2007)); *Cross,* 258 F.Supp.2d at 435 (holding that death threat to witness in DEA investigation satisfied requirement that witness tampering interfere with "official proceeding" under § 1512(b)(1)); *Hutcherson,* 2006 WL 1875955, at *3 ("Government agency actions, such as the FBI investigation of the defendant, are 'official proceedings' under Section 1512[.]"). The *Ramos* panel noted that the investigative authority of an agency bears on whether its investigations are "official proceedings," explaining that the internal investigation at issue was not an "official proceeding," in part because the agency lacked the authority to issue administrative subpoenas. *Ramos*, 537 F.3d at 463 n.17. And the procedural elements of an agency investigation are similarly important. A "proceeding before a government agency" typically "refers to hearings, or something procedurally similar, held before federal agencies." *Dunn*, 434 F.Supp.2d at 1207 (citing *Black's Law Dictionary* 1221 (7th Ed. 1999)).[36] "In all the instances in which the term 'official proceeding' is actually used in

---

[36]The court considers only whether the investigation is a "proceeding before a government agency" because the other types of "official proceedings" are clearly inapplicable. *See supra* note 35.

§ 1512, its sense is that of a hearing rather than simply any investigatory step taken by an agency." *Ramos*, 537 F.3d at 463. For example, an agency adjudication involving findings of fact and determinations that certain facts violate agency policies satisfied the "official proceeding" requirement of § 1512. *See United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (holding that process for determining violations of Bureau of Prison's Use of Force Program Statement was an "official proceeding" before government agency).

3

Because courts do not agree about whether an FBI investigation is an "official proceeding," and because the Fifth Circuit has held that the term is ambiguous, the court grants Simpson's motion to dismiss based on the alternative holding in *Ramos*. *Ramos*' holding that an internal Border Patrol investigation was not an "official proceeding" does not compel the conclusion that a FBI investigation can never qualify as an "official proceeding." *See Ramos*, 537 F.3d at 464 n.18 ("We do not address whether an agency investigation may never constitute an 'official proceeding.'"). *Ramos* held in the alternative that, absent another ground for decision, the rule of lenity would have compelled the conclusion that the investigation in that case was not an "official proceeding." The panel determined that the term "official proceeding" is "an ambiguous term in a criminal statute." *Id.* at 463-64. It explained that this ambiguity, absent binding case law, would require the court to vacate the defendants' convictions because the rule of lenity instructs it to "resolve ambiguity in criminal statutes by construing such statutes narrowly." *Id.* (quoting *United States v. Marek, 238 F.3d 310, 327 (5th Cir. 2001) (en banc)). Construing the ambiguous term "official

- 64 -

proceeding" narrowly, as required by the rule of lenity, the court held that § 1512(c) did not embrace the Border Patrol investigation at issue. *Id.* at 464.

The court grants Simpson's motion to dismiss count four because it is not clear that the FBI investigation in this case qualifies as an "official proceeding" before a government agency within the terms of § 1512. As *Ramos* held, "official proceeding" is an ambiguous term, *see* 537 F.3d at 463. The "official proceeding" requirement is an essential element of § 1512(c)(1), and courts have required the government to identify an "official proceeding" to adequately apprise a defendant of the charge against him. *See United States v. Shively,* 927 F.2d 804, 812 (5th Cir. 1991) (noting that, although not controlling, *United States v. Murphy,* 762 F.2d 1151 (1st Cir. 1985), reversed conviction under § 1512(a) because indictment's failure to "identify *any* proceeding" did not give adequate notice); *see also* Fifth Cir. Dist. Judges Ass'n Pattern Jury Instructions (Criminal Cases) 2.68 (2001) (requiring description of official proceeding named in indictment for instruction on § 1512(b)(1); not including an instruction for § 1512(c)). Count four charges that Simpson destroyed or concealed evidence with the intent to "impair its integrity and availability for use in an official proceeding, that being the criminal investigation by the Federal Bureau of Investigation." Indictment 58. The demonstrative "that" indicates that count four charges Simpson with destroying evidence with the intent to make it unavailable for use in the FBI investigation, not some other proceeding.

The FBI investigation in this case does not bear the marks of an "official proceeding," even though it was not an internal investigation and may have been more serious than the

internal employee investigation in *Ramos*. The government has not argued that the investigation involved the process or authority typically attending "official proceedings" before government agencies. Nor has it argued that the investigation included "hearings, or something procedurally similar," *see Dunn,* 434 F.Supp.2d at 1207, subpoena authority, *see Ramos*, 537 F.3d at 463 n.17, or a determination that agency policy had been violated, *see Perez*, 575 F.3d at 169. It was instead more of an "investigatory step," *see Ramos*, 537 F.3d at 463, towards the "official proceedings"—namely the grand jury investigation and the instant proceeding—that developed out of the FBI investigation.

The fruits of the FBI investigation may have *led* to an official proceeding like the grand jury investigation or the instant criminal case. *See Frankhauser,* 80 F.3d at 652 (considering evidence defendant knew of FBI investigation to indicate that he expected federal grand jury investigation or trial to begin soon); *Kelley,* 36 F.3d at 1128 ("Because [defendant] was well aware that his activities were under investigation by the Inspector General, a jury could reasonably infer that [he] knew a criminal investigation, including a grand jury proceeding, might well be forthcoming[.]"). Thus in dismissing this count, the court does not hold that interference with an FBI investigation can *never* be charged as part of a properly charged offense. And § 1512(f) makes clear that an official proceeding need not have been underway at the time Simpson allegedly destroyed evidence with the intent to hinder it.[37] But count four charges that the "official proceeding" Simpson contemplated was

---

[37] 18 U.S.C. § 1512(f):

the FBI investigation itself. Construing the term narrowly, , as required by the rule of lenity, the court cannot conclude that the FBI investigation itself—and not the grand jury investigation or this case—is an "official proceeding." The government has not alleged that Simpson intended to make evidence unavailable for another "official proceeding." *Cf. Shotts,* 145 F.3d at 1302 (finding "official proceeding" requirement satisfied by indictment alleging interference with federal grand jury investigation *and* FBI investigation). It has therefore failed adequately to allege an essential element of the crime charged—that when Simpson allegedly destroyed evidence, he did so intending to make it unavailable for use in an "official proceeding" as defined by § 1515.[38] The court dismisses count four of the indictment.

<hr />

> For the purposes of this section . . . an official proceeding need not be pending or about to be instituted at the time of the offense.

The government contends that the FBI investigation qualifies as an "official proceeding" because Simpson knew about the investigation when he allegedly destroyed or concealed evidence for use in it. But as § 1512(f) makes clear, the facts that an FBI investigation was underway and that Simpson knew this are irrelevant because an "official proceeding" need not have begun at the time of the offense. The relevant question is not whether the FBI investigation was underway, or whether Simpson knew that it was underway, but whether the investigation, as the only "official proceeding" alleged, satisfies the definition of that term.

[38]Because the court is dismissing counts four and six on these grounds, it need not address Simpson's argument that the term "official proceeding" is vague as applied to him. The court acknowledges that the Fifth Circuit has noted other cases requiring the government to specify which "official proceeding" a defendant intended to hinder. *See Shively,* 927 F.2d at 812. But the court need not resolve whether the term "official proceeding" used in reference to the FBI investigation would have been unconstitutionally vague as applied to Simpson because the court is dismissing counts four and six of the indictment.

*Motion to Dismiss Count Six*

Simpson moves to dismiss count six, which charges him with the offense of obstruction: destruction of evidence, in violation of 18 U.S.C. § 1512(k).[39] Count six alleges that Simpson and other defendants

> did knowingly combine, conspire, confederate, and agree among themselves, to corruptly destroy and conceal, and attempt to destroy and conceal records, documents, and other objects, namely computers, data storage devices, and other computer equipment used by Union Datacom Corporation and located at 2020 Live Oak, Dallas, Texas, with the intent to impair the integrity and availability of the digital records, documents, and other data for use *in an official proceeding*, that being the criminal investigation by the Federal Bureau of Investigation, in violation of 18 U.S.C. §1512(c)(1).

> In violation of 18 U.S.C. § 1512(k).

Indictment at 60 (emphasis added).

Simpson argues that count six fails to state an offense, fails to provide adequate notice of the crime charged, and is vague as applied to him. Simpson's arguments for dismissing count six are essentially the same as the ones for dismissing count four. He contends that the indictment fails to state an offense because the FBI investigation that is the subject of count six is not an "official proceeding" within the terms of the statute, and an "official proceeding" is an essential element of the offense. Simpson also argues, as he does in

---

[39]18 U.S.C. § 1512(k): "Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

seeking to dismiss count four, that the statute is vague as applied to him.

The government responds, as it does to Simpson's motion to dismiss count four, that the FBI investigation of Simpson was an "official proceeding" within the terms of the statute. The government maintains that its allegations that Simpson and others conspired to destroy and conceal computers in July 2006, with the intent of making this evidence unavailable for use in an official proceeding, adequately notify Simpson of the crime charged.

The court grants Simpson's motion to dismiss count six. It reaches this decision for essentially the same reasons it grants Simpson's motion to dismiss count four. *See supra* §VII(B). Because the court grants Simpson's motion to dismiss count six, it need not consider his argument that the term "official proceeding" in count six, as in count four, is vague as applied to him.

IX

*Motion to Dismiss Count Seven*

Simpson moves to dismiss count seven, arguing that the supporting statute is unconstitutionally vague.

A

Simpson is charged in count seven with falsely registering a domain name, in violation of 18 U.S.C. § 3559(g)(1). The indictment charges:

> [Simpson] did knowingly and intentionally falsely register a domain name, in that Simpson did register Camophone.com with the registration service Registerfly.com using a false contact name of "Stan Brown" and a false address in Portland, Oregon, and further that Simpson did knowingly and

- 69 -

> intentionally use the domain name Camophone.com in the
> course of the commission of the felony offense alleged in Count
> One, for which felony offense Simpson was convicted.

Indictment at 61. 18 U.S.C. § 3559(g)(1) provides a sentencing enhancement for a defendant who is convicted of a felony offense and who "knowingly falsely registered a domain name and knowingly used that domain name in the course of that offense[.]" "Falsely registers" means "registers in a manner that prevents the effective identification of or contact with the person who registers[.]" 18 U.S.C. § 3559(g)(2).

Simpson argues that it is not clear to a person of reasonable intelligence what allows or prevents "effective identification" of or contact with the person who registers a domain name. He relies on *Kolender v. Lawson*, 461 U.S. 352 (1983), which held unconstitutionally vague a California statute criminalizing a person's failure to provide credible and reliable identification upon a police officer's request. *Id.* at 355-56, 361. Simpson argues that, like the statute in *Kolender*, § 3559(g)(1) is vague because it does not provide a clear standard for a defendant's compliance.

The government responds that the statute in *Kolender* is distinguishable because § 3559(g)(1) provides fair warning that, if a person registers a domain name by providing false information and subsequently commits a felony using that domain name, his sentence will be enhanced.

## B

As the court has explained in § VI(D)(2), objections to vagueness under the Due Process Clause rest on a lack of notice and may be overcome in any specific case where a

reasonable person would know that his conduct is at risk. A vagueness challenge to a statute that does not involve a First Amendment freedom must be examined in light of the facts of the case. To be unconstitutionally vague, the statute must be impermissible in all its applications, including its application to the party who brings the vagueness challenge. To determine whether the statute is vague in all applications, this court should review the complainant's conduct before analyzing other hypothetical applications of the law because a party who engages in some conduct that is clearly proscribed cannot complain that the law is vague as applied to others. An ordinance is vague in all its applications when persons of common intelligence must necessarily guess at its meaning. And the fact that Congress might have chosen clearer and more precise language does not mean that the statute that it drafted is unconstitutionally vague.

Considering the allegations in this case, the court holds that the statute is not unconstitutionally vague as applied to Simpson and that *Kolender* is distinguishable. The statute in *Kolender* required a defendant to produce "credible and reliable" identification, defined as identification "carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself." *Kolender,* 461 U.S. at 355-56. The Court deemed the statute vague because its definition of "credible and reliable" identification "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect ha[d] satisfied the statute and must be permitted to go on his way in the absence of probable cause." *Id.* at 358. *Kolender* held that the statute was unconstitutional because individual views of credibility and authenticity were variable.

Section 3559(g)(1) does not confer such discretion on a law enforcement agent, but instead turns on Simpson's knowledge that he was registering a domain name in a manner that would prevent effective his identification or contact with him. Section 3559(g)(1) is violated when a person knowingly registers a domain name in a manner that prevents an enforcement agent from effectively identifying and contacting him. A violation of § 3559(g)(1) turns on the defendant's knowledge that the identity or other information he used to register a domain name would prevent effective identification. The indictment alleges that Simpson knowingly used a false contact name and address to register a domain name, which a reasonable and ordinary person could conclude would prevent effective identification (because he used a false name) and contact (because he used a false address). The determination that Simpson did knowingly use false information to register a domain name is of course a matter for proof at trial. But the definition of "falsely registers" is not vague as applied to Simpson because using false information to register a domain name reasonably prevents effective identification of the domain name registrant. Thus the court holds that, considering the alleged facts of this case, § 3559(g)(1) is not unconstitutionally vague as applied to Simpson.

X

*Motion to Sever Count Seven*

Simpson moves in the alternative to sever count seven of the indictment. He argues that this count should be severed because, as a sentencing enhancement provision, § 3559(g)(1) is not properly brought to the jury's attention in the indictment. Simpson maintains that including a sentencing enhancement provision in the indictment impairs the

jury's ability to fairly decide whether he is guilty of the underlying felony before determining that the sentencing enhancement provision applies.

The government responds that § 3559(g)(1) can be charged in the same indictment as the underlying offense, so long as the government proves the elements of the enhancement provision. The government also maintains that the allegations in count seven are sufficient because they identify the elements of § 3559(g)(1), providing Simpson sufficient notice and allowing him to plead acquittal or conviction as a bar to future prosecutions for the same offense.

The court denies Simpson's motion to sever count seven. Rule 8(a) provides that offenses may be charged in the same indictment when they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The Fifth Circuit disapproves the inclusion of sentencing enhancement provisions in an indictment when the other offenses charged are not sufficiently related to the grounds for enhancement. *See, e.g., United States v. Holloway,* 1 F.3d 307, 310-11 (5th Cir. 1993) (reversing failure to sever felon in possession weapons enhancement charge from indictment for unrelated robbery counts where government would not be required to prove felon status and weapon was discovered two months after alleged robbery). But counts that charge related offenses and result in enhanced sentences are permissible. *See, e.g., United States v. Getachew,* 2009 WL 211288, at *3 (N.D. Tex. Jan. 29, 2009) (Fitzwater, C.J.) (noting, in denying motion to suppress firearm, that defendant was charged in the same superseding indictment with possession with intent to distribute cocaine,

- 73 -

being a felon in possession of a firearm, in violation of §§ 922(g)(1) and 924(a)(2), and being a felon in possession of a firearm in furtherance of the commission of a drug trafficking crime, in violation of § 924(c)(1)(A)), *aff'd*, 364 Fed. Appx. 931 (5th Cir. 2010). To prove a violation of § 924(c)(1)(A), for example, the government must prove that the defendant possessed a weapon in furtherance of a drug crime. In Simpson's case, to prove a sentence enhancement under § 3559(g)(1), the government must of course prove that he falsely registered a domain name in the course of another felony offense. Simpson does not argue that the grounds for enhancement under § 3559(g)(1) are unrelated to the conspiracy charged in count one. And count seven expressly charges that Simpson used his falsely registered domain name in the course of the conspiracy alleged in count one. The counts are therefore sufficiently related to be charged in the same indictment. Moreover, the court can instruct the jury that § 3559(g)(1) does not apply unless Simpson is convicted of the offense charged in count one.

The court therefore denies Simpson's motion to sever count seven.

XI

*Motion to Dismiss on Double Jeopardy Grounds*

A

Simpson moves to dismiss the indictment on the ground of double jeopardy. [40] He

---

[40]Simpson filed this motion on April 4, 2011. In its March 22, 2011 order, the court permitted all defendants to file without leave of court by April 4, 2011 any pretrial motions that they could not reasonably have filed by the December 10, 2010 pretrial motion deadline and any motions pertaining to the third superseding indictment. Simpson could reasonably

maintains that, while pretrial detention *per se* is not punishment, he has been punished as a consequence of the indictments in this case, and no further punishment can be imposed. Simpson argues that he may suffer multiple punishments for the same offense if he is convicted under the indictment: one punishment during his pretrial detention and another punishment if he is convicted and sentenced to serve additional time in federal prison.

Simpson avers that he has been punished because (1) he was segregated from other defendants and placed in administrative detention for nearly three months, which is the most severe form of punishment an authority can impose, short of death; (2) he was not given notice or an opportunity to be heard before he was placed in administrative segregation; and (3) he was told he was placed in administrative detention by order of the prosecutor in this case. Simpson posits that additional punitive conduct of the prison officials is consistent with his administrative detention punishment: (1) his legal materials were seized and retained by the prison officials for five months, and (2) his calls to his attorneys from the prison were monitored and provided to the prosecution.

The government responds that Simpson's pretrial detention is not punishment for the crimes for which he is indicted; that Simpson is being detained because he was found by this court and the Fifth Circuit to be a flight risk, an obstruction risk, and a danger to the

---

have filed this motion prior to the December 10, 2010 pretrial motion deadline because it does not relate specifically to the third superseding indictment. But, as explained in the court's December 28, 2010 order, the court will not now require him to demonstrate cause for the late filing because the government did not oppose his filing this motion after the December 10, 2010 pretrial motion deadline.

community; that the Double Jeopardy Clause does not apply to pretrial detention or to prison disciplinary proceedings; that Simpson did not exhaust the administrative remedies available to him through the Bureau of Prisons; and that prison disciplinary sanctions do not implicate double jeopardy protections. In sum, the government asserts that Simpson failed to establish that he has suffered multiple punishments for the same conduct.

B

The court previously discussed these conditions of Simpson's pretrial confinement in deciding his motion to reconsider his detention order. *See United States v. Simpson*, 2010 WL 4340683 (N.D. Tex. Oct. 26, 2010) (Fitzwater, C.J.), *aff'd*, 408 Fed.Appx. 830 (5th Cir. Jan. 14, 2011). Simpson relied in that motion, as he does now, on cases like *Bell v. Wolfish*, 441 U.S. 520 (1979), to argue that his conditions of confinement constitute jeopardy, or, in the prior motion, to warrant his release. *Id.* at *2. The court held that those cases "are inapposite because they address civil rights actions seeking relief from pretrial detention due to length or conditions of confinement." *Id.* And the court noted that "cases involving a due process challenge to pretrial detention have focused solely upon the duration of detention" and that the cases "do not even remotely hint at the suggestion that due process might require a defendant to be released if pre-trial detention impairs his ability to prepare for trial." *Id.* at *3 (citation omitted).

The Fifth Amendment Double Jeopardy Clause protects against multiple prosecutions and punishments for the same offense. *See, e.g., Monge v. California*, 524 U.S. 721, 727 (1998). The Double Jeopardy Clause protects against "(1) prosecution of the same offense

after acquittal; (2) prosecution of the same offense after conviction; and (3) multiple punishments for the same offense." *United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992). One court has held that "28 U.S.C. § 2241 is the proper avenue by which to challenge pretrial detention, including when such challenges are based on double jeopardy grounds." *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). Simpson argues the third prong: that if he is found guilty of the offenses charged in the indictment and is assessed punishment for such offenses, he will suffer multiple punishments for the same offense because his pretrial detention is equivalent to punishment.

But "[p]retrial detention does not trigger the attachment of 'jeopardy' so as to invoke the protection of the Double Jeopardy Clause." *See United States v. Warneke*, 199 F.3d 906, 908 (7th Cir. 1999) (citation omitted). "By its terms, the double jeopardy clause 'applies only if there has been some event . . . which terminates the original jeopardy.'" *United States v. Grisanti*, 4 F.3d 173, 175 (2d Cir. 1993) (quoting *Richardson v. United States*, 468 U.S. 317, 325 (1984)). Jeopardy does not attach "until the defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975) (quoting *Serfass v. United States*, 420 U.S. 377, 388 (1975)). And a "mere indictment does not cause jeopardy to attach." *United States v. Hernandez*, 94 F.3d 606, 613 (10th Cir. 1996) (citing *Crist v. Bretz*, 437 U.S. 28, 36 (1978)). Rather, jeopardy attaches "at the time a jury is empanelled and sworn." *Yeager v. United States*, ___ U.S. ___, 129 S.Ct. 2360, 2372 (2009); *see also United States v. Garcia*, 993 F.2d 1543, at *1 n.4 (5th Cir. 1993) (per curiam) (unpublished opinion) ("[J]eopardy attaches in a jury trial when the jury is

empanelled and sworn, in a plea-bargaining context when the guilty plea is accepted, and in a bench trial when the court begins to hear evidence." (citing *Fransaw v. Lynaugh*, 810 F.2d 518, 523-24 (5th Cir. 1987))).

The statute authorizing pretrial detention, 18 U.S.C. § 3142, is remedial, not punitive. *See Warneke*, 199 F.3d at 908; *see also United States v. Salerno*, 481 U.S. 739, 746-47 (1987) (holding that pretrial detention is not punishment and serves a regulatory function). In *Warneke* the court recognized that the defendants "wisely recognize[d] that pretrial detention is not *per se* punitive and unconstitutional." *Warneke*, 199 F.3d at 908. Rather, the defendants in *Warneke* argued that the length of their pretrial detention was excessive in relation to its nonpunitive purposes. *Id.* The court held that defendants' proper recourse was not a motion to dismiss, particularly on double jeopardy grounds. *Id.* Instead, defendants could challenge their detention by seeking review of the detention order because statutory requirements and due process were not satisfied. *Id.* Like the defendants in *Warneke*, Simpson recognizes that pretrial detention is not *per se* punishment; Simpson argues instead that the *conditions* of his pretrial detention are punitive.

The court holds that, even assuming *arguendo* that Simpson's detention has become punitive, jeopardy has not attached in this case.[41] Jeopardy does not attach at the mere return of an indictment, *see Hernandez*, 94 F.3d at 613, but rather when the jury is empaneled and sworn, *see Yeager*, 129 S.Ct. at 2372. Simpson does not and cannot allege that jeopardy has

---

[41]Because the court rejects Simpson's argument on this basis, it need not consider the other grounds on which it is based.

attached in this case. The court has not empaneled or sworn a jury in this case; it has not

accepted a guilty plea from Simpson; and it has not begun to hear evidence in a bench trial.

The court holds that jeopardy has not attached in this case and denies Simpson's motion to

dismiss on double jeopardy grounds.

XII

*Motion to Unseal All Government Motions for Production*

A

Simpson moves to unseal any *ex parte* sealed government motions or applications for

production of documents.[42] He argues that the acquisition of documents after indictment and

prior to trial is a transparent procedure under Rule 17(c). He maintains that the government's

filing of a motion for production of documents under seal is a partial closure of the criminal

proceeding, which is a violation of his right to a public trial guaranteed by the Sixth

Amendment.

The government responds that the *ex parte* applications or motions should not be

unsealed because no evidence was produced from those applications or motions and/or

because the request for production is still pending. The government contends that it

---

[42]Simpson filed this motion on April 12, 2011. In its March 22, 2011 order, the court permitted all defendants to file without leave of court by April 4, 2011 any pretrial motions that they could not reasonably have filed by the December 10, 2010 pretrial motion deadline and any motions pertaining to the third superseding indictment. Simpson could reasonably have filed this motion prior to the December 10, 2010 pretrial motion deadline—at least as to the government's December 22, 2009 *ex parte* motion—but, as explained in the court's December 28, 2010 order, the court will not now require him to demonstrate cause for the late filing because the government did not oppose his filing this motion on April 12, 2011.

effectively lacks a right to a Rule 17(c) subpoena if Simpson seeks disclosure of such items, and that Simpson has no general constitutional right to discovery. The government also asserts that Simpson's only possible need for the evidence produced from the motions would be as grounds for a motion to suppress. There are two sealed requests and orders in this case—a December 22, 2009 motion and an April 6, 2011 application. The December 22, 2009 motion did not result in any evidence, and no evidence has yet been produced in response to the April 6, 2011 application, so there is no evidence for Simpson to attempt to suppress. The government agrees to provide Simpson and his codefendants any relevant evidence that is produced as a result of the *ex parte* motions.

B

The court addressed a similar argument made by Simpson in his August 25, 2010 motion to unseal an *ex parte* government application. *See United States v. Simpson*, 2010 WL 3633611, at *1 (N.D. Tex. Sept. 20, 2010) (Fitzwater, C.J.) (holding that sealing of government application did not violate Simpson's Sixth Amendment right to public trial). Then, as now, the court explained that Simpson is guaranteed a public trial by the Sixth Amendment. But his contention that the Sixth Amendment requires that all *ex parte* sealed government applications and motions for production of documents be unsealed lacks support.

"The Sixth Amendment applies to 'the entire trial.'" *Id.* (quoting *United States v. Sorrentino*, 175 F.2d 721, 722 (3d Cir. 1949)). "A public trial ensures that judges and prosecutors carry out their duties responsibly, that witnesses come forward, that perjury is discouraged, and that the public may see that the accused is dealt with fairly." *Id.* (citing

*Walker v. Georgia*, 467 U.S. 39, 46 (1984)). And as the court has previously held, "[t]here is no indication that the Sixth Amendment applies to non-trial proceedings or to other court actions that are not part of the trial." *Id.* (citing *United States v. Vazquez-Botet,* 532 F.3d 37, 51-52 (1st Cir. 2008) ("The defendants point to no precedent in the Supreme Court, this circuit, or elsewhere extending the Sixth Amendment public-trial right to an outside-of-trial [proceeding].")); *see also* 21A Am. Jur. 2d Crim. Law 969 (2010).

And the right to an open trial is not absolute but "may give way in certain cases to other rights or interests." *Walker*, 467 U.S. at 45. Simpson has not pointed to, and the court has not found, any support for the contention that sealing *ex parte* motions and applications for the production of documents violates his Sixth Amendment right to a public trial. Additionally, the government notes that the *ex parte* applications contain sensitive information about its investigative tools and techniques.

The court denies Simpson's motion to unseal *ex parte* applications and motions for production.

\* \* \*

For the reasons explained, the court grants Simpson's motions to dismiss counts four and six. The court also grants his alternative motion to strike surplusage from the indictment

to the extent that it strikes the overt act alleged as ¶ 17 on page 17.  The court denies his motions in all other respects.

**SO ORDERED**.

July 15, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE